IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED CARDIOVASCULAR SYSTEMS, INC. and GUIDANT SALES CORPORATION, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 98-80-SLR<br>) |
| MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**PLAINTIFFS' MEMORANDUM REGARDING DAMAGES**

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne S. Gaza (#4093)
gaza@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7509
*Attorneys for Advanced Cardiovascular Systems, Inc. and Guidant Sales Corporation*

OF COUNSEL:
J. Michael Jakes
Gerald F. Ivey
Michael A. Morin
FINNEGAN, HENDERSON, FARABOW
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, D.C. 20005
(202) 408-4000
(202) 408-4400

April 18, 2005

RLF1-2865619-1

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| I | NATURE AND STAGE OF THE PROCEEDING | 1 |
| | A. Boneau Patent Proceedings | 1 |
| | B. Lau Patent Proceedings | 2 |
| II | ACS'S DAMAGES FOR MEDTRONIC'S INFRINGEMENT OF THE LAU PATENTS | 3 |
| | A. Lost Profits | 3 |
| | B. Reasonable Royalty | 4 |
| | C. Willfulness | 4 |
| | D. Trial | 5 |
| III | THE DAMAGES TRIAL SHOULD NOT BE STAYED | 5 |
| | A. The Sole Basis for the Court's Stay—the Cordis Arbitration—is Irrelevant to the Lau Patent Case | 5 |
| | B. No Other Good Reason Justifies a Stay | 6 |
| | C. Medtronic's Position on Infringement Will Likely Preclude an Interlocutory Appeal | 7 |

# TABLE OF AUTHORITIES

**Cases**

*Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999) ............ 8

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ... 4

*In re Calmar, Inc.*, 854 F.2d 461 (Fed. Cir. 1988) ............ 9

*Johannsen v. Pay Less Drug Stores Northwest, Inc.*, 918 F.2d 160, 16 USPQ2d 1697 (Fed. Cir. 1990) ............ 8

*King Instruments Corp. v. Perego*, 65 F.3d 941 (Fed. Cir. 1995) ............ 4

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995) ............ 4

***Panduit** Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978) ............ 3

*PPG Indus., Inc. v. Celanese Polymer Spec. Co.*, 840 F.2d 1565 (Fed. Cir. 1988) ............ 8

*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989) ............ 4

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353 (Fed. Cir. 2003) ............ 8

*W.L. Gore & Assocs. v. Int'l Med. Pros. Res. Assoc.*, 975 F.2d 858 (Fed. Cir. 1992) ............ 8

**Rules**

Fed. R. Civ. P. 54(b) ............ 2, 8

**Regulations**

28 U.S.C. § 1292(c)(2) ............ 8

28 U.S.C. § 1295(a)(1) ............ 8

35 U.S.C. § 284 ............ 4

RLF1-2865619-1

I.   NATURE AND STAGE OF THE PROCEEDING

In this consolidated action, Medtronic Vascular, Inc and Medtronic USA, Inc (collectively "Medtronic") sued Advanced Cardiovascular Systems, Inc and Guidant Sales Corp (collectively "ACS") for infringement of its "Boneau" patents and alleged misappropriation of trade secrets  ACS sued Medtronic for infringement of its "Lau" patents  Both parties' patents involve stent technology

A.   **Boneau Patent Proceedings**

In addition to suing ACS, Medtronic also sued BSC and Medinol (C A 98-478), BSC alone (C A 04-034), and Cordis (C A 03-402) for infringement of the Boneau patents  These other three actions were placed on parallel discovery tracks with the ACS action, but were never consolidated  In each of the four actions, Medtronic advanced a lost profits damages theory that presumed that no other party sold an acceptable noninfringing alternative  In so doing, Medtronic presumed in each case that liability would be found in the other three cases as well  Medtronic thus affirmatively tied all four Boneau actions together for purposes of damages

On May 12, 2004, this Court stayed the Cordis action pending arbitration to determine whether Cordis holds a license to Medtronic's Boneau patents  (D I 167 (C A No 03-402) ) That determination, of course, was highly relevant to Medtronic's lost profits claims against all defendants, for if Cordis's products were licensed, they were, *per se,* noninfringing alternatives  Therefore, on May 21, 2004, ACS filed a motion to stay the remaining proceedings [1]  On

---

[1] The subject of the Cordis arbitration (whether Cordis held a license to the Boneau patents) was singularly relevant to Medtronic's Boneau patent allegations  Nevertheless, to promote judicial economy, ACS proposed to stay all aspects of the case (i e , Boneau patent, trade secret, and Lau patent issues), rather than the Boneau patent issues alone

August 26, 2004, the Court granted ACS's motion in part, staying damages in the three remaining actions pending the outcome of the Cordis arbitration. (D.I. 444.)[2]

On January 5, 2005, this Court granted summary judgment that ACS's accused stents do not infringe the Boneau patents (D.I. 546) and that Medtronic's state law claims are time-barred under the statute of limitations. (D.I. 544.) The Court entered a separate judgment on Medtronic's claims under Fed. R. Civ. P. 54(b) on February 2, 2005 (D.I. 582), which Medtronic has appealed to the Court of Appeals for the Federal Circuit. (D.I. 640.)

### B.  Lau Patent Proceedings

The Lau procedural history is much simpler. The present case against Medtronic is the only Lau patent infringement action pending in the United States.[3] On February 18, 2005, the jury returned a verdict that all of Medtronic's accused stents infringed all of the asserted claims of the Lau patents and that none of the asserted claims are invalid. (D.I. 629.) Post-trial motions are currently due on April 18, 2005. (D.I. 643.)

During the Lau patent trial, Medtronic raised an issue regarding the timing of Medtronic's infringing acts with respect to the issuance of ACS's asserted patents. (D.I. 600.) Although Medtronic has stipulated that the accused products were made, sold, and offered for sale in the United States, Medtronic moved for judgment of no infringement as a matter of law (JMOL) because ACS did not introduce evidence during the liability phase of the trial as to when precisely each product was sold. (D.I. 598; D.I. 600.) Since the timing of infringement was

---

[2] On August 4, 2004, BSC filed a separate motion in the 98-478 case to bifurcate and stay trial of the damages case until the conclusion of the liability phase, which ACS joined. (D.I. 393.) Prior to Medtronic's response, however, the defendants withdrew this motion as moot in light of the Court's decision to stay damages pending the outcome of the Cordis arbitration. (D.I. 232 (C.A. No. 98-478).)

[3] While ACS previously sued both BSC and Cordis for infringement of the Lau patents, those cases were settled several years ago, with ACS granting licenses to both parties. ACS has stipulated that BSC's and Cordis's licensed products are noninfringing alternatives.

addressed in the damages experts' reports and had not been raised in the pre-trial order, this issue was appropriately deferred to the damages phase of the case

In accordance with this Court's Scheduling Order, the parties exchanged damages expert reports last summer before the Court bifurcated and stayed damages. As a result, during the March 2, 2005 conference call, the Court instructed the parties to complete the minimal remaining discovery on damages—"simply updating the cost and sales information, supplying it to the experts, and deposing the experts"—by early June, 2005. (D.I. 642 at 25.) Currently, the parties are scheduling depositions. Once these depositions have been completed, the damages case will be trial-ready.

A bench trial on Medtronic's allegations of inequitable conduct is scheduled for June 7-8, 2005. After resolution of the remaining liability issues, ACS would expect to address the issue of injunctive relief

## II. ACS'S DAMAGES FOR MEDTRONIC'S INFRINGEMENT OF THE LAU PATENTS

ACS's damages case on the Lau patents is straightforward. ACS seeks lost profits for a portion of Medtronic's infringing sales based on its market share and a reasonable royalty on the remainder

### A. Lost Profits

ACS first intends to show that it is entitled to lost profits. To that end, ACS will address the basic *Panduit* test, which includes four factors: (a) demand for its patented product; (b) absence of acceptable non-infringing alternatives; (c) its marketing and manufacturing capability to exploit the demand for its product; and (d) its profit in the absence of infringement. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)

ACS acknowledges, however, that acceptable noninfringing alternatives have existed for a period of the time that Medtronic has been infringing the Lau patents. Specifically, since May and April 2000, BSC and Cordis, respectively, have been selling their stent products under license from ACS. Because they are licensed, they do not infringe, and thus represent "noninfringing alternatives." Therefore, ACS is not seeking lost profits on all of Medtronic's infringing sales, but instead seeks lost profits on only on a portion of those sales, as endorsed by the Federal Circuit on numerous occasions. *See, e.g., State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222-23 (Fed. Cir. 1995); *King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed. Cir. 1995).

ACS will introduce evidence of its entitlement to lost profits damages through, *inter alia*, the expert testimony of Dr. Sharon Oster, an economics professor at Yale University.

**B.    Reasonable Royalty**

ACS is statutorily entitled to at least a reasonable royalty for all Medtronic infringing sales for which it does not receive lost profits. *See* 35 U.S.C. § 284. The determination of a reasonable royalty rate will be discussed in the context of the *Georgia Pacific* factors. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120, (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).

ACS will introduce evidence of the appropriate reasonable royalty rate through, *inter alia*, the expert testimony of Dr. Ashley Stevens, who is the Director of the Office of Technology Transfer at Boston University.

**C.    Willfulness**

Discovery on willful infringement was stayed on August 26, 2004, in conjunction with damages. (D.I. 444 at 3-4.) ACS believes that willfulness discovery, however, can be completed in relatively short order. Specifically, Medtronic should decide soon whether it will rely on an

- 4 -

advice of counsel defense Once Medtronic elects whether or not to do so (and produces any opinions consistent with that decision), ACS believes that willfulness discovery can be completed within 4-6 weeks thereafter Thus, the willfulness case could be trial-ready by late summer

### D. Trial

ACS estimates that the damages/willfulness trial can be completed in one week On the subject of damages, ACS intends to adduce expert testimony from Drs Oster and Stevens, and may also present testimony by ACS and Medtronic fact witnesses on relevant subjects such as production, finance, and marketing Because a new jury will be empanelled, ACS may also provide background testimony necessary to educate the jury on such subjects as stents in general, the relevant market, the parties, the Lau patents, infringement, and the relevant products

On the subject of willfulness, ACS cannot yet predict which witnesses it may call, as willfulness discovery has not yet commenced ACS does, however, believe that a combined damages/willfulness trial will take no more than one week

## III. THE DAMAGES TRIAL SHOULD NOT BE STAYED

### A. The Sole Basis for the Court's Stay—the Cordis Arbitration— is Irrelevant to the Lau Patent Case

The sole basis for the Court's stay in this case was the Cordis arbitration, which was to determine whether Cordis held a license to the Boneau patents Specifically, the Court stated that "the result of the arbitration is *singularly material* to the issue of damages and what kinds of damages [Medtronic] can demand, should infringement be found " (D I 444 at 4 (emphasis added) ) Thus, the rationale for the stay had nothing to do with the Lau patent case Nor could it have, for the issue of whether Cordis holds a license to the *Boneau* patents has no conceivable

relevance to the *Lau* patent case. As the Court has repeatedly emphasized, the Lau and Boneau patent cases—though consolidated for convenience—are separate and distinct.

Because the Boneau patents are no longer at issue before this Court, and the Lau patents have already been found by the jury to infringe, there is no compelling reason to further postpone resolution of the damages issues. All damages fact discovery has been complete, and expert reports exchanged. As the Court recognized, all that remains is to be done is (1) exchange updated data (this has already been done), (2) provide it to the experts, and (3) depose the experts. (D.I. 642 at 23.) Thus, absent obstruction by Medtronic, the damages case will be trial-ready in a matter of weeks. There is no justifiable reason for a further delay.

### B.  No Other Good Reason Justifies a Stay

As discussed above, this is the only litigation involving the Lau patents currently pending in the United States. Accordingly, in contrast to the Boneau situation, there are no pending litigations regarding such issues as whether other parties' products infringe the Lau patents or whether other parties hold licenses to the Lau patents. Indeed, ACS has already stipulated that, since 2000, the other major players' (i.e., BSC's and Cordis's) stents *are* acceptable noninfringing alternatives, and has been correspondingly conservative in its damages claims, seeking approximately $1 billion less from Medtronic in damages than Medtronic sought from ACS.

Therefore, Medtronic's argument during the March 2, 2005, telephone conference that ACS's request to stay proceedings on *Boneau* patent damages somehow compels a further stay on *Lau* patent damages is illusory. Whereas ACS's damages claim presumes the presence of noninfringing alternatives, Medtronic's damages claim did just the opposite, presuming their absence. In so doing, Medtronic placed all of its damages eggs in a single basket. If the jury returned a verdict of noninfringement for any defendant, then that party's product would become

- 6 -

an acceptable non-infringing alternative in the other three Boneau actions. This, in turn, would significantly limit Medtronic's potential recovery.

It was for that reason that, when BSC filed a separate motion to bifurcate damages, ACS joined the motion. Of course, the relevance of that motion is questionable anyway, since it was withdrawn as moot after the Court granted ACS's original motion. But, prophylactically, it is worth noting that all bases for that motion were entirely irrelevant to the Lau damages case.

Specifically, BSC argued:

[the consolidated] case would depend in large part upon the resolution of liability issues that are the primary focus of other pending cases. These issues include:

- Whether Cordis has held a license to the [Boneau patents] since January 1999 by virtue of its settlement with Vascular;
- If Cordis has not held such license, which (if any) of Cordis's stent products are covered by the claims of the [Boneau patents];
- Which (if any) of ACS's stent products are covered by the claims of the [Boneau patents]; [and]
- Which (if any) of the [BSC/Medinol] products infringe patents held by Cordis.

(D.I. 232 (C.A. No. 98-478) at 5.) Thus, like ACS's earlier motion to stay pending arbitration, BSC's motion was singularly relevant to Medtronic's *Boneau* damages claims.

Therefore, aside from Medtronic's understandable (but unjustified) desire to postpone accountability for its infringement, there is no reason to further delay damages proceedings. The damages/willfulness trial should proceed at the Court's earliest convenience.

### C. Medtronic's Position on Infringement Will Likely Preclude an Interlocutory Appeal

Despite having stipulated that its accused products were made, sold, and offered for sale in the United States, Medtronic moved for judgment of no infringement as a matter of law (JMOL) on the grounds that ACS had not introduced evidence during the February trial of specifically when each of Medtronic's products were actually sold. (D.I. 598 at 6-7.) But since

- 7 -

timing of infringement was addressed in the damages experts' reports and had not been raised in the pre-trial order, this issue was appropriately deferred to the damages phase of the case. As such, Medtronic's theory, if accepted, would preclude entry of judgment until ACS proves that Medtronic's infringing acts occurred after ACS's asserted patents issued.

As a result, Medtronic's liability theory requiring proof of when the infringing acts took place precludes an interlocutory appeal before the damages trial as well. The case would clearly not be "final" under 28 U.S.C. § 1295(a)(1). *See, e.g.*, *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 204 (1999) (defining a final judgment as one that "ends the litigation on the merits and leaves nothing for the court to do but execute judgment"), *PPG Indus., Inc. v. Celanese Polymer Spec. Co.*, 840 F.2d 1565, 1567 (Fed. Cir. 1988) (same). Nor would the case be ripe for certification under Fed. R. Civ. P. 54(b), which allows entry of a final judgment "as to one or more but fewer than all of the claims or parties." *See W.L. Gore & Assocs. v. Int'l Med. Pros. Res. Assoc.*, 975 F.2d 858, 863 (Fed. Cir. 1992) because "Rule 54(b) does not relax the finality required of each decision, as an individual claim." *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003) (stating that "A judgment is not final for purposes of Rule 54(b) unless it is an ultimate disposition of an individual claim entered in the course of a multiple claims action.") (internal citations omitted). Thus, Rule 54(b) cannot apply.

Medtronic's liability theory further precludes use of the exception to the "finality" rule, 28 U.S.C. § 1292(c)(2), which allows an interlocutory appeal in a patent infringement action that is "final except for an accounting." *Johannsen v. Pay Less Drug Stores Northwest, Inc.*, 918 F.2d 160, 162, 16 USPQ2d 1697 (Fed. Cir. 1990)(stating "if the patent owner obtains a judgment of patent infringement, and an accounting is impending, the adjudged infringer may appeal under § 1292(c)(2).") Since Medtronic contends that there can be no final determination of liability

- 8 -

for infringement until ACS establishes the timing of the infringing acts (which will be adduced during the damages trial), Medtronic will not be able to appeal under § 1292(c)(2).

In any event, the Court is neither required to enter a judgment that would allow an interlocutory appeal under § 1292(c)(2) nor stay the damages trial. *See In re Calmar, Inc.*, 854 F.2d 461, 463 (Fed. Cir. 1988). In this case, given Medtronic's position on liability, the obvious course is to proceed with the damages trial as expeditiously as reasonably possible to a final judgment that can then be appealed.

Dated: April 18, 2005

Of Counsel:
J. Michael Jakes
Gerald F. Ivey
Michael A. Morin
FINNEGAN, HENDERSON, FARABOW
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, D.C. 20005
(202) 408-4000
(202) 408-4400

/s/ Anne Shea Gaza
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne S. Gaza (#4093)
gaza@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7509
*Attorneys for Advanced Cardiovascular Systems, Inc. and Guidant Sales Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered, to the following:

**VIA HAND DELIVERY**
Karen Jacobs Louden, Esquire
Philip H. Bangle, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I hereby certify that on April 18, 2005 I transmitted the document by Federal Express to the following non-registered participant:

**VIA FEDERAL EXPRESS**
Raphael V. Lupo, Esquire
Donna M. Tanguay, Esquire
Mark G. Davis, Esquire
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005

*/s/ Anne Shea Gaza*
Anne Shea Gaza (#4093)