# EXHIBIT A

Advanced Cardiovascular
Systems, Inc. v. Medtronic
Vascular, Inc., C. A. No. 98-80
(SLR) (Consolidated with C. A.
No. 98-314 (SLR) and C. A. No.
98-316 (SLR))

# EXHIBIT A
# TO MEDTRONIC'S JMOL MOTION

## TEXT OF ASSERTED CLAIMS

| 5,514,154 patent, claims 1, 4 and 12 | |
|---|---|
| 1. A longitudinally flexible stent for implanting in a body lumen, comprising:<br><br>a plurality of cylindrical elements which are independently expandable in the radial direction and which are interconnected so as to be generally aligned on a common longitudinal axis;<br><br>a plurality of connecting elements for interconnecting said cylindrical elements, said connecting elements configured to interconnect only said cylindrical elements that are adjacent to each other; and<br><br>an outer wall surface on said cylindrical elements, said outer wall surface being smooth prior to expansion of said stent and forming a plurality of outwardly projecting edges which form as said stent is expanded radially outwardly from a first diameter to a second, enlarged diameter. | |
| | 4. The stent of claim 1, wherein said plurality of cylindrical elements include a plurality of peaks and valleys having a serpentine pattern. |
| 12. A longitudinally flexible stent, comprising:<br><br>a plurality of cylindrical elements which are independently expandable in the radial direction and which are | |

| | |
|---|---|
| interconnected so as to be concentrically aligned on a common longitudinal axis; and<br><br>a plurality of generally parallel connecting elements for interconnecting said cylindrical elements, said connecting elements configured to interconnect only said cylindrical elements that are adjacent to each other, so that said stent, when expanded radially outwardly, retains its overall length without appreciable shortening. | |

| 6,066,167 patent, claims 5 and 8 | |
|---|---|
| 5. A longitudinally flexible stent for implanting in a body lumen, comprising;<br><br>a first cylindrically shaped element, a second cylindrically shaped element, a third cylindrically shaped element, up to an Nth cylindrically shaped element, the cylindrically shaped elements being generally independently expandable in the radial direction and generally aligned on a common longitudinal axis;<br><br>each of the cylindrically shaped elements having an undulating pattern of peaks and valleys, the undulating pattern of each of the cylindrically shaped elements being out of phase with the undulating pattern of each of the adjacent cylindrically shaped elements; and<br><br>each of the cylindrically shaped elements being interconnected to one of the adjacent cylindrically shaped elements so that the cylindrically shaped elements form a longitudinally flexible stent. | |
| | 8. The stent of claim 5, wherein the peaks and valleys have a substantially U-shaped configuration. |

Exhibit A

-3-

| 6,066,168 patent, claims 1, 3 and 11 | |
|---|---|
| 1. A longitudinally flexible-stent for implanting in a body lumen, comprising:<br><br>a plurality of cylindrical elements which are expandable in the radial direction and which are connected so as to be generally aligned on a common longitudinal axis; and<br><br>at least one weld connection between each cylindrical element to attach the plurality of cylindrical elements along the common longitudinal axis thereby forming the longitudinally flexible stent. | |
| | 3. The stent of claim 2, wherein the generally sinusoidal pattern of the at least some of the cylindrical elements is continuous. |
| | 11. The stent of claim 1, wherein each cylindrical element has a length and a diameter, the length of each cylindrical element being less than the diameter of the cylindrical element when the stent is in an unexpanded and uncrimped configuation. |

| 6,432,133 patent, claims 1, 2, 3 and 9 | |
|---|---|
| 1. A longitudinally flexible stent, comprising:<br><br>a plurality of interconnected cylindrical elements aligned along a stent longitudinal axis, each cylindrical element having a shape configured to enable the cylindrical element to expand with the inflation of an expandable member disposed therein;<br><br>wherein each of the cylindrical elements has a diameter and a length, the length of each cylindrical element being less than the diameter of the cylindrical element upon inflation of the expandable member; and<br><br>the cylindrical elements having a length less than 2.5 mm. | |
| | 2. The stent of claim 1, wherein upon expansion there is no appreciable shortening of the stent. |
| | 3. The stent of claim 1, wherein the shape includes U-shaped members. |
| | 9. The stent of claim 8, wherein the individual cylindrical elements are interconnected by at least one weld connection. |

Exhibit A

-5-

# EXHIBIT B



APPLICATION

of

LILIP LAU

WILLIAM M. HARTIGAN

JOHN J. FRANTZEN

for

UNITED STATES LETTERS PATENT

on

EXPANDABLE STENTS AND METHOD FOR MAKING SAME



Docket No. ACS 35765 (3804.1)

Sheets of Drawing:  Four (4)



Attorneys
FULWIDER PATTON LEE & UTECHT
10877 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

4

C 08 281790

## EXPANDABLE STENTS AND METHOD FOR MAKING SAME

### RELATED APPLICATIONS

This application is a continuation-in-part of co-pending U.S. patent application U.S. Serial No. 08/164,986 filed December 9, 1993, which is a continuation application of

5    U.S. Serial No. 07/783,558 filed October 28, 1991, now abandoned.

### BACKGROUND OF THE INVENTION

This invention relates to expandable endoprosthesis devices, generally called stents, which are adapted to be

10   implanted into a patient's body lumen, such as blood vessel, to maintain the patency thereof. These devices are very useful in the treatment of atherosclerotic stenosis in blood vessels.

Stents are generally tubular-shaped devices which function to hold open a segment of a blood vessel or other

15   anatomical lumen. They are particularly suitable for use to support and hold back a dissected arterial lining which can occlude the fluid passageway therethrough.

Further details of prior art stents can be found in U.S. Patent 3,868,956 (Alfidi et al.); U.S. Patent 4,512,338

20   (Balko et al.); U.S. Patent 4,553,545 (Maass et al.); U.S. Patent 4,733,665 (Palmaz); U.S. Patent 4,762,128 (Rosenbluth); U.S. Patent 4,800,882 (Gianturco); U.S. Patent 4,856,516 (Hillstead); and U.S. Patent 4,886,062 (Wiktor), which are hereby incorporated herein in their entirety by reference

25   thereto.

Various means have been described to deliver and implant stents. One method frequently described for delivering a stent to a desired intraluminal location includes mounting the expandable stent on an expandable member, such as a

30   balloon, provided on the distal end of an intravascular catheter, advancing the catheter to the desired location within the patient's body lumen, inflating the balloon on the catheter

Docket No. ACS 35765 (3804.1)

5

-2-

to expand the stent into a permanent expanded condition and then deflating the balloon and removing the catheter. One of the difficulties' encountered using prior stents involved maintaining the radial rigidity needed to hold open a body
5  lumen while at the same time maintaining the longitudinal flexibility of the stent to facilitate its delivery.

What has been needed and heretofore unavailable is a stent which has a high degree of flexibility so that it can be advanced through tortuous passageways and can be readily
10 expanded and yet have the mechanical strength to hold open the body lumen into which it expanded. The present invention satisfies this need.

## SUMMARY OF THE INVENTION

The present invention is directed to an expandable
15 stent which is relatively flexible along its longitudinal axis to facilitate delivery through tortuous body lumens, but which is stiff and stable enough radially in an expanded condition to maintain the patency of a body lumen such as an artery when implanted therein.

20     The stent of the invention generally includes a plurality of radially expandable cylindrical elements which are relatively independent in their ability to expand and to flex relative to one another. The individual radially expandable cylindrical elements of the stent are dimensioned so as to be
25 longitudinally    shorter    than    their    own    diameters. Interconnecting elements or struts extending between adjacent cylindrical elements provide increased stability and a preferable position to prevent warping of the stent upon the expansion thereof. The resulting stent structure is a series
30 of radially expandable cylindrical elements which are spaced longitudinally close enough so that small dissections in the wall of a body lumen may be pressed back into position against the lumenal wall, but not so close as to compromise the longitudinal flexibilities of the stent. The individual

Docket No. ACS 35765 (3804.1)

6

-3-

cylindrical elements may rotate slightly relative to adjacent cylindrical elements without significant deformation, cumulatively giving a stent which is flexible along its length and about its longitudinal axis but is still very stiff in the
5  radial direction in order to resist collapse.

The stent embodying features of the invention can be readily delivered to the desired lumenal location by mounting it on an expandable member of a delivery catheter, for example a balloon, and passing the catheter-stent assembly through the
10  body lumen to the implantation site.  A variety of means for securing the stent to the expandable member on the catheter for delivery to the desired location are available.  It is presently preferred to compress the stent onto the balloon. Other means to secure the stent to the balloon include
15  providing ridges or collars on the inflatable member to restrain lateral movement, or using bioresorbable temporary adhesives.

The presently preferred structure for the expandable cylindrical elements which form the stents of the present
20  invention generally circumferential undulating pattern, e.g. serpentine.  The transverse cross-section of the undulating component of the cylindrical element is relatively small and preferably has an apect ratio of about two to one to about 0.5 to one.  A one to one apect ratio has been found particularly
25  suitable.  The open reticulated structure of the stent allows for the perfusion of blood over a large portion of the arterial wall which can improve the healing and repair of a damaged arterial lining.

The radial expansion of the expandable cylinder
30  deforms the undulating pattern thereof similar to changes in a waveform which result from decreasing the waveform's amplitude and the frequency.  Preferably, the undulating patterns of the individual cylindrical structures are in phase with each other in order to prevent the contraction of the stent along its
35  length when it is expanded.  The cylindrical structures of the stent are plastically deformed when expanded (except with NiTi

Docket No. ACS 35765 (3804.1)

7

-4-

alloys) so that the stent will remain in the expanded condition and therefore, they must be sufficiently rigid when expanded to prevent the collapse thereof in use. During expansion of the stent, portions of the undulating pattern will tip outwardly

5 resulting in projecting members on the outer surface of the expanded stent. These projecting members tip radially outwardly from the outer surface of the stent and embed in the vessel wall and help secure the expanded stent so that it does not move once it is implanted.

10      With superelastic NiTi alloys, the expansion occurs when the stress of compression is removed so as to allow the phase transformation from austenite back to martensite and as a result the expansion of the stent.

      The elongated elements which interconnect adjacent

15 cylindrical elements should have a transverse cross-section similar to the transverse dimensions of the undulating components of the expandable cylindrical elements. The interconnecting elements may be formed in a unitary structure with the expandable cylindrical elements from the same

20 intermediate product, such as a tubular element, or they may be formed independently and connected by suitable means, such as by welding or by mechanically securing the ends of the interconnecting elements to the ends of the expandable cylindrical elements. Preferably, all of the interconnecting

25 elements of a stent are joined at either the peaks or the valleys of the undulating structure of the cylindrical elements which for the stent. In this manner there is no shortening of the stent upon expansion.

      The number and location of elements interconnecting

30 adjacent cylindrical elements can be varied in order to develop the desired longitudinal flexibility in the stent structure both in the unexpanded as well as the expanded condition. These properties are important to minimize alteration of the natural physiology of the body lumen into which the stent is

35 implanted and to maintain the compliance of the body lumen which is internally supported by the stent. Generally, the

Docket No. ACS 35765 (3804.1)

8

-5-

greater the longitudinal flexibility of the stent, the easier and the more safely it can be delivered to the implantation site.

In a presently preferred embodiment of the invention
5  the stent is conveniently and easily formed by coating stainless steel tubing with a material resistant to chemical etching, removing portions of the coating to expose portions of underlying tubing which are to be removed to develop the desired stent structure. The exposed portions of the tubing
10  are removed by chemically etching from the tubing exterior leaving the coated portion of the tubing material in the desired pattern of the stent structure. The etching process develops smooth openings in the tubing wall without burrs or other artifacts which are characteristic of mechanical or laser
15  machining processes in the small sized products contemplated. Moreover, a computer controlled laser patterning process to remove the chemical resistive coating makes photolithography technology adaptable to the manufacture of these small products. The forming of a mask in the extremely small sizes
20  needed to make the small stents of the invention would be a most difficult task. A plurality of stents can be formed from one length of tubing by repeating the stent pattern and providing small webs or tabs to interconnect the stents. After the etching process, the stents can be separated by severing
25  the small webs or tabs which connect them.

Other features and advantages of the present invention will become more apparent from the following detailed description of the invention. When taken in conjunction with the accompanying exemplary drawings.

30      BRIEF DESCRIPTION OF THE DRAWINGS

FIGURE 1 is an elevational view, partially in section, of a stent embodying features of the invention which is mounted on a delivery catheter and disposed within a damaged artery.

Docket No. ACS 35765 (3804.1)

9

-6-

FIG. 2 is an elevational view, partially in section, similar to that shown in FIG. 1 wherein the stent is expanded within a damaged artery, pressing the damaged lining against the arterial wall.

5          FIG. 3 is an elevational view, partially in section showing the expanded stent within the artery after withdrawal of the delivery catheter.

FIG. 4 is a perspective view of a stent embodying features of the invention in an unexpanded state, with one end 10 of the stent being shown in an exploded view illustrate the details thereof.

FIG. 5 is a plan view of a flattened section of a stent of the invention which illustrates the undulating pattern of the stent shown in FIG. 4.

15          FIG. 6 is a schematic representation of equipment for selectively removing coating applied to tubing in the manufacturing of the stents of the present invention.

FIGS. 7 through 10 are perspective views schematically illustrating various configurations of 20 interconnective element placement between the radially expandable cylindrical elements of the stent.

FIG. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent which are out of 25 phase.

NEW MATTER

FIG. 12 is an enlarged partial view of the stent of FIG. 5 with the various members slightly expanded.

Docket No. ACS 35765 (3804.1)

*10*

**NEW MATTER**

-7-

FIG. 13 is a perspective view of the stent of FIG. 4 after it is fully expanded depicting some members projecting radially outwardly.

FIG. 14 is an enlarged, partial perspective view of one U-shaped member with its tip projecting outwardly after expansion.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 illustrates a stent 10 incorporating features of the invention which is mounted onto a delivery catheter 11. The stent generally comprises a plurality of radially expandable cylindrical elements 12 disposed generally coaxially and interconnected by elements 13 disposed between adjacent cylindrical elements. The delivery catheter 11 has an expandable portion or balloon 14 for expanding of the stent 10 within an artery 15. The artery 15, as shown in FIG. 1, has a dissected lining 16 which has occluded a portion of the arterial passageway.

The delivery catheter 11 onto which the stent 10 is mounted, is essentially the same as a conventional balloon dilatation catheter for angioplasty procedures. The balloon 14 may be formed of suitable materials such as polyethylene, polyethylene terephthalate, polyvinyl chloride, nylon and ionomers such as Surlyn® manufactured by the Polymer Products Division of the Du Pont Company. Other polymers may also be used. In order for the stent 10 to remain in place on the balloon 14 during delivery to the site of the damage within the artery 15, the stent 10 is compressed onto the balloon. A retractable protective delivery sleeve 20 as described in co-pending applications Serial No. 07/647,464 filed on april 25, 1990 and entitled STENT DELIVERY SYSTEM may be provided to further ensure that the stent stays in place on the expandable portion of the delivery catheter 11 and prevent abrasion of the body lumen by the open surface of the stent 20 during delivery

Docket No. ACS 35765 (1804.1)



II

-8-

to the desired arterial location.  Other means for securing the
stent 10 onto the balloon 14 may also be used, such as
providing collars or ridges on the ends of the working portion,
i.e. the cylindrical portion, of the balloon.

5          Each radially expandable cylindrical element 12 of
the stent 10 may be independently expanded.  Therefore, the
balloon 14 may be provided with an inflated shape other than
cylindrical, e.g. tapered, to facilitate implantation of the
stent 10 in a variety of body lumen shapes.

10          In a preferred embodiment, the delivery of the stent
10 is accomplished in the following manner.  The stent 10 is
first mounted onto the inflatable balloon 14 on the distal
extremity of the delivery catheter 11.  The balloon 14 is
slightly inflated to secure the stent 10 onto the exterior of

15   the balloon.  The catheter-stent assembly is introduced within
the patient's vasculature in a conventional Seldinger technique
through a guiding catheter (not shown).  A guidewire 18 is
disposed across the damaged arterial section with the detached
or dissected lining 16 and then the catheter-stent assembly is

20   advanced over a guidewire 18 within the artery 15 until the
stent 10 is directly under the detached lining 16.  The balloon
14 of the catheter is expanded, expanding the stent 10 against
the artery 15, which is illustrated in FIG. 2.  While not shown
in the drawing, the artery 15 is preferably expanded slightly

25   by the expansion of the stent 10 to seat or otherwise fix the
stent 10 to prevent movement.  In some circumstances during the
treatment of stenotic portions of an artery, the artery may
have to be expanded considerably in order to facilitate passage
of blood or other fluid therethrough.

30          The stent 10 serves to hold open the artery 15 after
the catheter 11 is withdrawn, as illustrated by FIG. 3.  Due to
the formation of the stent 10 from elongated tubular member,
the undulating component of the cylindrical elements of the
stent 10 is relatively flat in transverse cross-section, so

35   that when the stent is expanded, the cylindrical elements are
pressed into the wall of the artery 15 and as a result do not

Docket No. ACS 35765 (3804.1)

12

-9-

interfere with the blood flow through the artery 15. The
cylindrical elements 12 of stent 10 which are pressed into the
wall of the artery 15 will eventually be covered with
endothelial cell growth which further minimizes blood flow
5  interference.  The undulating portion of the cylindrical
sections 12 provide good tacking characteristics to prevent
stent movement within the artery.  Furthermore, the closely
spaced cylindrical elements 12 at regular intervals provide
uniform support for the wall of the artery 15, and consequently
10 are well adapted to tack up and hold in place small flaps or
dissections in the wall of the artery 15 as illustrated in
FIGS. 2 and 3.

        FIG. 4 is an enlarged perspective view of the stent
10 shown in FIG. 1 with one end of the stent shown in an
15 exploded view to illustrate in greater detail the placement of
interconnecting elements 13 between adjacent radially
expandable cylindrical elements 12.  Each pair of the
interconnecting elements 13 on one side of a cylindrical
element 12 are preferably placed to achieve maximum flexibility
20 for a stent.  In the embodiment shown in FIG. 4 the stent 10
has three interconnecting elements 13 between adjacent radially
expandable cylindrical elements 12 which are 120 degrees apart.
Each pair of interconnecting elements 13 on one side of a
cylindrical element 12 are offset radially 60 degrees from the
25 pair on the other side of the cylindrical element.  The
alternation of the interconnecting elements results in a stent
which is longitudinally flexible in essentially all directions.
Various configurations for the placement of interconnecting
elements are possible, and several examples are illustrated
30 schematically in FIGS. 7-10. However, as previously mentioned,
all of the interconnecting elements of an individual stent
should be secured to either the peaks or valleys of the
undulating structural elements in order to prevent shortening
of the stent during the expansion thereof.
35      FIG. 10 illustrates a stent of the present invention
wherein three interconnecting elements 12 are disposed between

Docket No. ACS 35765 (3804.1)



13

-10-

radially expandable cylindrical elements **11**. The interconnecting elements 12 are distributed radially around the circumference of the stent at a 120-degree spacing. Disposing four or more interconnecting elements 13 between adjacent

5 cylindrical elements 12 will generally give rise to the same considerations discussed above for two and three interconnecting elements.

The properties of the stent 10 may also be varied by alteration of the undulating pattern of the cylindrical

10 elements 13. FIG. 11 illustrates an alternative stent structure in which the cylindrical elements are in serpentine patterns but out of phase with adjacent cylindrical elements. The particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13,

15 or the amplitude of the undulations, are chosen to fill particular mechanical requirements for the stent such as radial stiffness.

The number of undulations may also be varied to accommodate placement of interconnecting elements 13, e.g. at

20 the peaks of the undulations or along the sides of the undulations as shown in FIGS. 5 and 11.

In keeping with the invention, and with reference to FIGS. 4 and 12-14, cylindrical elements 12 are in the form of a serpentine pattern 30. As previously mentioned, each

25 cylindrical element 12 is connected by interconnecting elements 13. Serpentine pattern 30 is made up of a plurality of U-shaped members 31, W-shaped members 32, and Y-shaped members 33, each having a different radius so that expansion forces are more evenly distributed over the various members.

30 As depicted in FIGS. 13 and 14, after cylindrical elements 12 have been radially expanded, outwardly projecting edges 34 are formed. That is, during radial expansion U-shaped members 31 will tip outwardly thereby forming outwardly projecting edges. These outwardly projecting edges provide for

35 a roughened outer wall surface of stent 10 and assist in implanting the stent in the vascular wall by embedding into the

**NEW MATTER**

Docket No. ACS 15765 (1804.1)

*14*

NEW
MATTER

-11-

vascular wall.  In other words, outwardly projecting edges
embed into the vascular wall, for example artery 15, as
depicted in FIG. 3.  Depending upon the dimensions of stent 10
and the thickness of the various members making up the
5   serpentine pattern 30, any of the U-shaped members 31, W-shaped
members 32, and Y-shaped members 33 can tip radially outwardly
to form a projecting edge 34.  It is most likely and preferred
that U-shaped members 31 tip outwardly since they do not join
with any connecting member 13 to prevent them from expanding
10  outwardly.

        The stent 10 of the present invention can be made in
many ways.  However, the preferred method of making the stent
is to coat a thin-walled tubular member, such as stainless
steel tubing, with a material which is resistive to chemical
15  etchants, remove portions of the coating to expose underlying
tubing which is to be removed but to leave coated portions of
the tubing in the desired pattern for the stent so that
subsequent etching will remove the exposed portions of the
metallic tubing, but will leave relatively untouched the
20  portions of the metallic tubing which are to form the stent.
The coated portion of the metallic tube is in the desired shape
for the stent.  An etching process avoids the necessity of
removing burrs or slag inherent in conventional or laser
machining process.  It is preferred to remove the etchant-
25  resistive material by means of a machine-controlled laser as
illustrated schematically in FIG. 6.

        A coating is applied to a length of tubing which,
when cured, is resistive to chemical etchants.  "Blue
Photoresist" made by the Shipley Company in San Jose,
30  California, is an example of suitable commercially available
photolithographic coatings.  The coating is preferably applied
by electrophoretic deposition.

        To ensure that the surface finish is reasonably
uniform, one of the electrodes used for the electrochemical
35  polishing is a doughnut-shaped electrode which is placed about
the central portion of the tubular member.

Docket No. ACS 35765 (3804.1)



15

-12-

The tubing may be made of suitable biocompatible material such as stainless steel, titanium, tantalum, superelastic NiTi alloys and even high strength thermoplastic polymers. The stent diameter is very small, so the tubing from
5  which it is made must necessarily also have a small diameter. Typically the stent has an outer diameter on the order of about 0.06 inch in the unexpanded condition, the same outer diameter of the tubing from which it is made, and can be expanded to an outer diameter of 0.1 inch or more. The wall thickness of the
10 tubing is about 0.003 inch. In the instance when the stent was plastic, it would have to be heated within the arterial site where the stent is expanded to facilitate the expansion of the stent. Once expanded, it would then be cooled to retain its expanded state. The stent may be conveniently heated by
15 heating the fluid within the balloon or the balloon directly by a suitable system such as disclosed in a co-pending application Serial No. 07/521,337, filed January 26, 1990 entitled DILATATION CATHETER ASSEMBLY WITH HEATED BALLOON which is incorporated herein in its entirety by reference. The stent
20 may also be made of materials such as superelastic NiTi alloys such as described in co-pending application Serial No. 07/629,381, filed December 18, 1990, entitled SUPERELASTIC GUIDING MEMBER which is incorporated herein in its entirety by reference. In this case the stent would be formed full size
25 but deformed (e.g. compressed) into a smaller diameter onto the balloon of the delivery catheter to facilitate transfer to a desired intraluminal site. The stress induced by the deformation transforms the stent from a martensite phase to an austenite phase and upon release of the force, when the stent
30 reaches the desired intraluminal location, allows the stent to expand due to the transformation back to the martensite phase.

Referring to FIG. 6, the coated tubing 21 is put in a rotatable collet fixture 22 of a machine controlled apparatus 23 for positioning the tubing 21 relative to a laser 24.
35 According to machine-encoded instructions, the tubing 21 is rotated and moved longitudinally relative to the laser 24 which

Docket No. ACS 35765 (3804.1)

13

16

-13-

is also machine controlled.  The laser selectively removes the
etchant-resistive coating on the tubing by ablation and a
pattern is formed such that the surface of the tube that is to
be removed by a subsequent chemical etching process is exposed.
5    The surface of the tube is therefore left coated in the
discrete pattern of the finished stent.

A presently preferred system for removing the coating
on the tubing includes the use an 80-watt $CO_2$ laser, such as a
Coherent Model 44, in pulse mode (0.3 mS pulse length); 48 mA
10   key current and 48 W key power with 0.75 W average power, at
100 Hz; Anorad FR=20; 12.5 Torr; with no assist gas.  Low
pressure air is directed through the fine focus head to ensure
that no vapor contacts the lens.  The assist gas jet assembly
on the laser unit may be removed to allow a closer proximity of
15   the fine focus head and the collet fixture.  Optimum focus is
set at the surface of the tubing.  Cured photo-resist coating
readily absorbs the energy of the $CO_2$ wavelength, so that it
can be readily removed by the laser.  A coated 4-inch length of
0.06 inch stainless steel tubing is preferred and four stents
20   can be patterned on the length of tubing.  Three tabs or webs
between stents provide good handling characteristics for the
tubing after the etching process.

The process of patterning the resistive coating on
the stent is automated except for loading and unloading the
25   length of tubing.  Referring again to FIG. 6 it may be done,
for example, using a CNC-opposing collet fixture 22 for axial
rotation of the length of tubing, in conjunction with a CNC X/Y
table 25 to move the length of tubing axially relative to a
machine-controlled laser as described.  The entire space
30   between collets can be patterned using the $CO_2$ laser set-up of
the foregoing example.  The program for control of the
apparatus is dependent on the particular configuration used and
the pattern to be ablated in the coating, but is otherwise
conventional.

35   This process makes possible the application of
present photolithography technology in manufacturing the

Docket No. ACS 35765 (3804.1)

-14-

stents.  While there is presently no practical way to mask and
expose a tubular photo-resist coated part of the small size
required for making intravascular stents, the foregoing steps
eliminate the need for conventional masking techniques.

5         After the coating is thus selectively ablated, the
tubing is removed from the collet fixture 22.  Next, wax such
at ThermoCote N-4 is heated to preferably just above its
melting point, and inserted into the tubing under vacuum or
pressure.  After the wax has solidified upon cooling, it is
10   reheated below its melting point to allow softening, and a
smaller diameter stainless steel shaft is inserted into the
softened wax to provide support.  The tubing is then etched
chemically in a conventional manner.  After cutting the tabs
connecting the stents any surface roughness or debris from the
15   tabs is removed.  The stents are preferably electrochemically
polished in an acidic aqueous solution such as a solution of
ELECTRO-GLO #300, sold by the ELECTRO-GLO CO., Inc. in Chicago,
Illinois, which is a mixture of sulfuric acid, carboxylic
acids, phosphates, corrosion inhibitors and a biodegradable
20   surface active agent.  The bath temperature is maintained at
about 110-135 degrees F. and the current density is about 0.4
to about 1.5 amps per in.[2]  Cathode to anode area should be at
least about two to one.  The stents may be further treated if
desired, for example by applying a biocompatible coating.

25         While the invention has been illustrated and
described herein in terms of its use as an intravascular stent,
it will be apparent to those skilled in the art that the stent
can be used in other instances such as to expand prostatic
urethras in cases of prostate hyperplasia.  Other modifications
30   and improvements may be made without departing from the scope
of the invention.

          Other modifications and improvements can be made to
the invention without departing from the scope thereof.

Docket No. ACS 35765 (3804.1)



18



08/281 790

**NEW MATTER/ DELETED MATTER**

ABSTRACT

The invention is directed to an expandable stent for implantation in a body lumen, such as an artery, and a method for making it from a single length of tubing.  The stent
5  consists of a plurality of radially expandable cylindrical elements generally aligned on a common axis and interconnected by one or more interconnective elements.  The individual radially expandable cylindrical elements consist of ribbon-like material disposed in an undulating pattern.  Portions of the
10  expanded stent project outwardly into engagement with the vessel wall to more securely attach the stent.

Docket No. ACS 35765 (3804.1)

24

PRINT OF DRAWINGS
AS ORIGINALLY FILED

GOG/198

08 281790

1/4



FIG. 1

FIG. 2

FIG. 3

30

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 281790

2/4



FIG. 4

FIG. 6

CNC CONTROLLER

FIG. 5

31

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08  281790

3 / 4



FIG. 7          FIG. 8          FIG. 9

FIG. 10

FIG. 11

32

NEW
MATTER



PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 281790

4/4

FIG.12

FIG.13

FIG.14

33

# EXHIBIT C



**"Cottrell, Frederick"**
**<Cottrell@RLF.com>**

02/03/2005 05:55 PM

To: slr_civil@ded.uscourts.gov
cc: klouden@mnat.com, michael.morin@finnegan.com, jrizzo@mwe.com
Subject: ACS v. Medtronic, CA NO 98-80

Dear Chief Judge Robinson,

In light of Your Honor's reconsideration ruling yesterday that "cylindrical elements" require "at least two of the three letter shaped elements," (i.e., U's, Y's, and W's), ACS respectfully asks the Court to consider two problematic aspects of that construction.

First, whereas the Court's revised construction was based on the dictionary definition of "combination," the Lau specification does not refer to a "combination" of U's, Y's, and W's. Instead, the patent discloses one embodiment that has a "plurality of U-shaped, W-shaped, and Y-shaped members." ('154 patent, col. 6:12-14.) Since "combination" does not appear anywhere in the Lau claims or the Lau specification, the definition of "combination"--a term coined for the first time by Medtronic in this litigation--cannot properly define the scope of the Lau claims.

Second, the language the Court relied upon to define "cylindrical elements" as containing U's, Y's, or W's was not even included in the original Lau application, filed in 1991. That language was instead added in the continuation-in-part application that led to the '154 patent. Yet the original Lau application (and the '955 Lau patent that issued from it) both recited and claimed "cylindrical elements," despite no mention of U's, Y's, or W's in the specification. Thus, the inventors clearly did not intend to define "cylindrical elements" as necessarily including U's, Y's, or W's. Although the original Lau application contained figures of stents with U's, Y's, and/or W's, there is no legal basis for limiting claims based solely on figures of preferred embodiments.

Finally, although the Court's original claim construction required a "combination" of U's, Y's, or W's, ACS did not move for reconsideration at that time because the issue appeared to be harmless error. Specifically, it was undisputed that all the accused stents contain U-shaped members, which is all the Court's construction required. In light of the Court's revised claim construction, however, the error is no longer harmless because the BeStent2 (one of the accused products) does not contain two different letter shapes. Thus, if the Court does not reconsider its ruling, ACS may be forced to consent to judgment of noninfringement for that product.

ACS respectfully requests an opportunity to address this important issue. ACS understands that counsel for both parties are here in Wilmington. The Court's time permitting, ACS's counsel would be prepared to appear before the Court to address this issue tomorrow, February 4, before trial starts on Monday, February 7.

Respectfully, Fred Cottrell, Counsel for Plaintiff ACS
Richards, Layton & Finger, P.A.
(302) 651-7700
(302) 651-7701 fax

# EXHIBIT D



"Karen Jacobs
Louden"
<KLouden@MNAT.com
>

02/04/2005 05:37 AM

To: <slr_civil@ded.uscourts.gov>
cc: <cottrell@rlf.com>, <michael.morin@finnegan.com>,
    <jrizzo@mwe.com>, <mweil@mwe.com>, <mflores@mwe.com>,
    <fmorisseau@mwe.com>
Subject: Advanced Cardiovascular Systems v. Medtronic Vascular, CA No.
    98-80 (SLR)

Dear Chief Judge Robinson,

ACS's email of last evening simply seeks to reargue matters that the Court already has decided (twice), and as to which ACS has been fully heard.  In essence, ACS seeks reconsideration of the Court's reconsideration Order.  This matter is closed, however, and thus the Court should decline ACS's invitation to reopen it through email submissions or a hearing.  ACS's email request also is improper and should be rejected on numerous other grounds.

First, ACS seeks substantive relief without a formal motion.  The Court's directive is clear:  "A party seeking substantive relief must pursue such relief in the form of a motion filed in a manner consistent with the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure, and the Rule 16 scheduling order in place in the case."

Second, it is not surprising that ACS did not file a motion because there is no provision in the rules for reconsideration of a reconsideration order.  As ACS argued in its response to Medtronic's motion for reconsideration, "[a] motion for reargument should not be used to rehash arguments already briefed or to allow a 'never-ending polemic' between the litigants and the Court." (D.I. 568 at 3, citing *Canouse v. Keiper Recaro Seating, Inc.,* 2003 WL 22939439, *1 (D. Del. July 24, 2003)).  It is precisely this "never-ending polemic" in which ACS now seeks to engage the Court.

Third, ACS's email request is untimely.  This Court issued its claim construction ruling nearly a month ago on January 5, 2005.  Although ACS now complains about that Order, it never moved to reconsider it.  ACS admits as much, but argues that its failure to file a motion should be disregarded because "the issue appeared to be harmless error."  ACS does not even attempt to explain, however, why it did not raise its present arguments in its response to Medtronic's motion for reconsideration which requested precisely the relief the Court granted.  Thus, ACS's arguments should have been anticipated.  (D.I. 580 at 11).

ACS's motion also should be flatly rejected on the substance.

ACS first argues that the Court erred in adopting a construction that requires a "combination" of U's, Y's and W's.  Medtronic requested that construction as early as August 9, 2004 in the parties' claim construction chart (D.I. 399).  The issue already has been fully briefed several times and decided.  As Medtronic explained in both its claim construction briefs (*see, e.g.,* D.I. 420 at 9 and D.I . 470 at 18-19) and its motion for reconsideration (D.I. 568 at 3), the passage of the Lau specification on which the Court relied fully supports that construction (a **plurality** of U-shaped members 31, W-shaped members 32, **and** Y-shaped members 33).  ACS did not even challenge Medtronic's arguments in its response to Medtronic's motion for reconsideration.

ACS next argues that the Court's definition of "cylindrical elements" as containing U's, Y's, or W's cannot be correct because this specific language allegedly was not included in the original Lau application that led to the '955 patent.    In the first instance, this argument comes for the first time *after* the close of claim construction briefing, *after a* Markman hearing, *after* the Court issued its claim construction ruling, and *after* the Court granted reconsideration of its summary judgment ruling. It simply comes too late. The '955 patent application was never even before the Court in the claim construction briefing. If it were so critical to ACS's argument, then certainly ACS should have raised it. As ACS stressed at the hearing this Wednesday, the parties were expected to fully address each other's proposed claim constructions in the claim construction process. (See D.I. 580 at 7-8). The fact that ACS never made this argument prior to yesterday evening simply demonstrates its lack of merit.

Moreover, while the original Lau application did not explicitly use the terms "U's, Y's and W's" in the specification, it is consistent in scope. As ACS admits, all of the figures depict stents with U's, Y's and W's. While ACS tries to revive its argument that the figures are just "preferred embodiments," the Court explicitly rejected that argument in its Order construing the patents in suit. (See D.I. 541 at 3, n. 5).

The '955 specification also describes the same structure: "[A]ll of the interconnecting elements of a stent are joined at either the peaks or the valleys of the undulating structure of the cylindrical elements which form the stent." ('955 patent, 2:66-3:1). This is the same language found in the '154 patent at 2:67-3:3. It is the interconnecting elements that form the stem of the Y's or the middle of the W's where they join the peaks or valleys of the undulating structure. The '154 patent makes clear that the reference to U's, W's and Y's is in keeping with that description. ("In keeping with the invention, and with reference to FIGS. 4 and 12-14, cylindrical elements 12 are in the form of a serpentine pattern. *As previously mentioned*, each cylindrical element 12 is connected by interconnecting elements 13. Serpentine pattern 30 is made up of a plurality of U-shaped 31, W-shaped members 32, and Y-shaped members.") ('154 patent, 6:8-14). The reference to previous material in the '955 application indicates that the inventors believed the added language was entirely consistent with the structure described in the '955 application, as is plain from the specification itself.

For the foregoing reasons, the Court should decline ACS's improper e-mail request to reconsider its reconsideration Order. The matter has already been decided, and therefore, there should be no further hearing.

Respectfully,

Karen Jacobs Louden


.....

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

.....