IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED CARDIOVASCULAR | ) | |
| SYSTEMS, INC. and GUIDANT SALES | ) | |
| CORPORATION, | ) | |
| | ) | C. A. No. 98-80 (SLR) |
| Plaintiffs, | ) | (Consolidated with C. A. |
| | ) | No. 98-314 (SLR) and C. A. |
| v. | ) | No. 98-316 (SLR)) |
| | ) | |
| MEDTRONIC VASCULAR, INC. and | ) | |
| MEDTRONIC USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEDTRONIC'S RESPONSE TO PLAINTIFF'S MEMORANDUM REGARDING DAMAGES

MORRIS, NICHOLS, ARSHT & TUNNELL
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Defendants Medtronic Vascular, Inc.
and Medtronic USA, Inc.

OF COUNSEL:
Raphael V. Lupo
Donna M. Tanguay
Mark G. Davis
James G. Rizzo
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005

Fay M. Morisseau
Mauricio A. Flores
Matthew F. Weil
Michael R. O'Neill
David M. Stein
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue
Suite 400
Irvine, CA 92612-7107

May 18, 2005

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS

INTRODUCTION                                                                                    1

I.    ACS OVERSTATES ITS CASE FOR DISSOLVING THE
      STAY, APPARENTLY MISCONSTRUING THE COURT'S
      REASONS FOR ENTERING THE STAY IN THE FIRST
      PLACE.                                                                                    1

II.   ACS    MISSTATES    MEDTRONIC'S    POSITION    ON
      INFRINGEMENT.                                                                             3

III.  THE FACT THAT ACS FAILED TO PROVE ALL
      ELEMENTS OF LIABILITY IS NOT A GOOD REASON TO
      PROCEED NOW WITH A FULL-BLOWN DAMAGES
      TRIAL.                                                                                    4

ii.

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Duro-Last, Inc. v. Custom Seal, Inc.*,
     321 F.3d 1098 (Fed. Cir. 2003)         5

## INTRODUCTION

Medtronic responds to Plaintiffs' Memorandum Regarding Damages (D.I. 649) to point out two apparent errors by ACS and to clarify Medtronic's own position with respect to the possibility of certifying this case for an appeal rather than proceeding immediately with a full-blown trial on damages and willfulness.

I.     **ACS OVERSTATES ITS CASE FOR DISSOLVING THE STAY, APPARENTLY MISCONSTRUING THE COURT'S REASONS FOR ENTERING THE STAY IN THE FIRST PLACE.**

One mistake in ACS's Memorandum is that it appears to misconstrue the Court's reasons for staying damages and willfulness in this case. As a result, ACS overstates its case for now reversing that decision.

In its April 18 Memorandum, ACS asserts that "[t]he sole basis for the Court's stay in this case was the Cordis arbitration . . . " and quotes the Court to the effect that it believed the result of the arbitration would be "singularly material." (D.I. 649 at 5). ACS thus reads the Court's statement as suggesting that awaiting the outcome of the arbitration was the Court's "sole" or "only" reason for staying damages and willfulness.

It is the Court, of course, that is in the best position to know its own mind on this point, but Medtronic does not read the Court's order to indicate that the Cordis arbitration was the *only* reason it bifurcated damages. As Medtronic noted in its April 18 submission, ACS (and the other defendants in the Boneau case) certainly made much broader arguments in favor of a stay, contending that the damages proceeding in both the Boneau and Lau cases should await final liability determinations in a number of stent related cases. (*See* D.I. 652 at 2-3, 5-6). Indeed, in its own brief in support of its motion to stay, ACS pointed out in reference to the Boneau *and* Lau litigations: "It defies logic and basic concepts of economy

for multiple cases involving the same patents to proceed on two different tracks, when that result can be avoided by simply staying the Boneau *and Lau* cases until the Cordis arbitration is resolved." (D.I. 372 at 7-8 (emphasis added)). If ACS believed then (as it purports to believe now) that the Lau case had absolutely nothing to do with the Cordis arbitration, then ACS had no basis for its statement to the Court.

While the Court pointed out that it considered the outcome of the arbitration important to the proper analysis of damages in the Boneau case, there were – and are – additional reasons justifying the continuation of the stay in this case. Indeed, Medtronic pointed to at least five such reasons in its own initial submission. (*See* D.I. 652 at 2-10).[1] Those other reasons amply support keeping the stay in place now, especially given the aim of avoiding wasteful proceedings that may prove unnecessary and the aim of not forcing Medtronic to waive its attorney-client privilege prematurely in order to defend against ACS's charge of willful infringement.

As this Court has noted, this case involved very close issues of claim construction. (D.I. 637, Tr. at 1711). The Court's summary judgment ruling on the Boneau patents also turned on claim construction. In both cases, claim construction will be reviewed *de novo* by the Federal Circuit. In this sense, district courts sometimes "write on water" when they engage in the exercise of claim construction, and the Federal Circuit often has the final word on these difficult issues. The justifications offered by Medtronic for continuing the stay on damages until the Federal Circuit has acted in the various stent cases all reflect this

---

[1] Medtronic's April 18 Memorandum contained a typographical error that Medtronic wishes to correct. The reference to "S7 and Driver" in the last line on page 7 should have read, instead, "Driver and MicroDriver." Medtronic has filed a corrected submission.

concern.  The Court should not now reverse its earlier decision to stay damages and willfulness.

## II.     ACS MISSTATES MEDTRONIC'S POSITION ON INFRINGEMENT.

At trial, ACS failed to show that Medtronic committed any infringing act *during the term* of any asserted patent.  This failure of proof precludes a finding of liability for infringement.

In its April 18 Memorandum, ACS implicitly acknowledges that it is not entitled to entry of judgment of infringement *now* based on the evidence presented to the jury during the liability phase.  ACS contends, however, that it can cure its failure of proof by trying the rest of its cause of action to a separate jury during the damages trial.  Indeed, ACS goes so far as to suggest that this is how Medtronic, too, sees the world.  (To quote ACS: "Medtronic contends that there can be no final determination of liability for infringement *until* ACS establishes the timing of the infringing acts."  (D.I. 649 at 8-9 (emphasis added)).

In fact, however, ACS *had* its chance to get a "final determination" on liability. Indeed, it had at least four such chances.  It could have offered evidence during its case in chief, but neglected to do so.  When Medtronic pointed out the failure of proof (which it did at the earliest proper moment, in its timely JMOL motion), ACS could have sought leave of Court to reopen its case.  It declined to do so.  It could have attempted to  provide the evidence in response to Medtronic's proffer on the subject.  (D.I. 626).  It did not.  And in response to Medtronic's JMOL at the close of all evidence, ACS could have sought leave to offer evidence, if it had any, before the case went to the jury (or at least proffered evidence for the Court's consideration).  ACS instead informed the Court it wished to "defer" that showing to a damages trial.

When it refused to offer any evidence that Medtronic's products were made, used, sold or offered for sale during the term of the patents, ACS forfeited its one opportunity to get a "final determination" in its favor. Because ACS failed to prove all elements of infringement, it cannot not be entitled to damages.

**III.     THE FACT THAT ACS FAILED TO PROVE ALL ELEMENTS OF LIABILITY IS NOT A GOOD REASON TO PROCEED NOW WITH A FULL-BLOWN DAMAGES TRIAL.**

ACS contends the Court is not in a position to enter a properly appealable judgment based on the jury's verdict. That, of course, is incorrect. As Medtronic has argued in its JMOL motion, the Court can and should enter a judgment of non-infringement based on ACS's admitted failure of proof. Because the Court made it clear that the first trial in this case was to decide infringement and validity, and because ACS had every opportunity to timely cure its failure of proof on infringement, *that* judgment would certainly be affirmed on appeal (and probably without the need for the Federal Circuit to inquire into other hotly contested issues, such as claim construction). ACS had its chance to convince a jury that the elements of a cause of action for infringement were satisfied. It chose not to present evidence on all of the elements of its cause of action; Medtronic is aware of no provision in the law for ACS to "finish up" its showing on this cause of action with another jury.

It is interesting (though not surprising) that ACS now argues that the proper way to remedy its failure of proof is to forge ahead with a full-blown damages trial (notwithstanding how burdensome and potentially wasteful such a course would be). ACS does not ask the Court for some sort of abbreviated, more convenient proceeding or proffer to submit additional evidence on the "timing issue." It apparently hopes to argue to the Federal Circuit that Medtronic's Seventh Amendment rights are preserved so long as *some* jury hears the

relevant facts (even if it is not the same jury that considered liability).  For the reasons laid out in Medtronic's Motion for Judgment As A Matter of Law (*see* D.I. 654 at 24), however, ACS's failure of proof cannot be cured, either by having the Court receive more evidence or by retrying a portion of ACS's infringement case to a different jury.

Despite what ACS may argue, there is nothing Draconian or unfair about expecting ACS to present its liability case during the time set aside by the Court for the trial on liability. The parties' stipulation could not have been clearer.  Medtronic agreed that it "made, used, sold or offered for sale" the various accused products, but it did not stipulate to dates when the products were used.  ACS could not possibly have believed at that juncture that Medtronic was agreeing that all patents could be asserted against all products without respect to when the patents issued, particularly given that the stipulation was made before ACS had made any effort to limit the number asserted claims or identify which claims were asserted against which products.  ACS did not revisit this proposed stipulation after it narrowed the number of claims and identified particular accused products in connection with particular claims.  And Medtronic was never asked to, nor did it ever, stipulate as to when those sales took place.  To establish that separate and equally essential fact, ACS had to put a knowledgeable witness on the stand and ask those questions.  ACS failed to take advantage of multiple chances to do so.

For its part, Medtronic did the fair and correct thing by calling the deficiency of proof to ACS's and the Court's attention with its motion for judgment as a matter of law. Such motions are required at the close of the plaintiff's case (and not just at the close of all evidence) precisely to give the plaintiff an opportunity to cure any defects of proof that it is in its power to cure.  *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098 (Fed. Cir. 2003) ("The purpose of the requirement [that the sufficiency of the evidence be challenged before the jury retires to deliberate] is to afford the opposing party an opportunity to cure the defects in proof

that might otherwise preclude the party from taking the case to the jury.")  Medtronic gave

ACS that opportunity; ACS declined to take advantage of it.  ACS's failure in no way justifies

now holding a full-blown damages trial, most of which would have nothing at all to do with

the evidence ACS now belatedly seeks to proffer.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Karen Jacobs Louden (#2881)
klouden@mnat.com
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Attorneys for Defendants
Medtronic Vascular, Inc. and Medtronic USA, Inc.

OF COUNSEL:

Raphael V. Lupo
Donna M. Tanguay
Mark G. Davis
James G. Rizzo
McDERMOTT WILL & EMERY  LLP
600 13th Street, N.W.
Washington, DC  20005

Fay M. Morisseau
Mauricio A. Flores
Matthew F. Weil
Michael R. O'Neill
David M. Stein
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue
Suite 400
Irvine, CA  92612-7107

May 18, 2005

466018

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 18, 2005 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Frederick L. Cottrell, III
> Anne Shea Gaza
> **Richards Layton & Finger**
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19899

I further certify that on May 18, 2005 I served copies of the foregoing to the following counsel in the manner indicated:

> **By Hand**
>
> Frederick L. Cottrell, III
> Anne Shea Gaza
> **Richards Layton & Finger**
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19899

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Karen Jacobs Louden
Karen Jacobs Louden (#2881)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899-1347
(302)658-9200
Attorney for Plaintiffs Medtronic Vascular, Inc. and
Medtronic USA, Inc.
klouden@mnat.com