IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED CARDIOVASCULAR SYSTEMS, INC. and GUIDANT SALES CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC.,<br><br>　　　　　Defendants. | C.A. No. 98-80-SLR |

**PLAINTIFFS' RESPONSE TO MEDTRONIC'S SUBMISSION
REGARDING THE TRIAL OF DAMAGES AND WILLFULNESS**

　　　　　　　　　　　　　　　　　　　Frederick L. Cottrell, III (#2555)
　　　　　　　　　　　　　　　　　　　cottrell@rlf.com
　　　　　　　　　　　　　　　　　　　Anne S. Gaza (#4093)
　　　　　　　　　　　　　　　　　　　gaza@rlf.com
　　　　　　　　　　　　　　　　　　　RICHARDS, LAYTON & FINGER
　　　　　　　　　　　　　　　　　　　One Rodney Square
　　　　　　　　　　　　　　　　　　　P.O. Box 551
　　　　　　　　　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　　　　　　　　　(302) 651-7509
　　　　　　　　　　　　　　　　　　　*Attorneys for Advanced Cardiovascular Systems,
　　　　　　　　　　　　　　　　　　　Inc. and Guidant Sales Corporation*

OF COUNSEL:
J. Michael Jakes
Gerald F. Ivey
Michael A. Morin
FINNEGAN, HENDERSON, FARABOW
　GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, D.C. 20005
(202) 408-4000
(202) 408-4400

May 18, 2005

RLF1-2877712-1

- i -

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT ......................................................................................................................1

    A. No Pending Matter Justifies a Stay ..........................................................................1

        1. The Cordis Arbitration is Irrelevant ..............................................................1

        2. Medtronic's Hope for the Lau Appeal Does Not Justify a Stay ...................1

        3. The Boneau Appeal is Irrelevant ..................................................................2

        4. The Cordis Palmaz Case is Irrelevant ..........................................................3

        5. Medtronic's "Noninfringing Alternatives" Argument is Untimely ..............3

    B. Medtronic Vastly Overstates the Remaining Discovery ..........................................4

    C. Separate Trials Will Not Unfairly Prejudice Medtronic ..........................................5

    D. Trial Can Be Completed in One Week ....................................................................6

    E. Medtronic's "Timing" Argument Undermines Its Request for a Stay .....................6

III. CONCLUSION ...................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) (*Aro II*) ............................................................................................. 3

*Ciena Corp. v. Corvis Corp.*,
    210 F.R.D. 519 (D. Del. 2002) ......................................................................................... 5

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ....................................................................................... 4

*In re Calmar, Inc.*,
    854 F.2d 461 (Fed. Cir. 1988) ......................................................................................... 2

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    587 F. Supp. 1112 (D. Del. 1984) .................................................................................... 5

*Princeton Biochemicals Inc. v. Beckman Instruments, Inc.*,
    180 F.R.D. 254 (D.N.J. 1997) .......................................................................................... 5

*R.E. Serv. Co. v. Johnson & Johnston Assoc., Inc.*,
    1995 WL 138545 (N.D. Cal. Mar. 27, 1995) ................................................................... 2

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 ..................................................................................................................... 3

*Roberts v. Sears, Roebuck and Co.*,
    1988 WL 107369 (N.D. Ill. Nov. 11, 1988) ..................................................................... 5

*SciMed Life Sys., Inc. v. Johnson & Johnson*,
    No. 99-904, 2001 WL 935623 (D. Del. Aug. 15, 2001) .................................................. 2

**Rules**

Fed. R. Civ. Pro. 42(b) ......................................................................................................... 5, 6

**Regulations**

28 U.S.C. § 1292(c)(2) ......................................................................................................... 2, 7

28 U.S.C. § 1295(a)(1) ............................................................................................................ 7

35 U.S.C. § 284 ........................................................................................................................ 2

I. INTRODUCTION

Despite Medtronic's assertions to the contrary, the remaining damages and willfulness issues are straightforward. With respect to damages, the jury has already determined infringement and validity. Fact discovery is complete. Expert reports on damages were completed last year, with expert depositions scheduled to be completed by the end of June. And, since there are no other Lau cases pending in this Court, or anywhere else in the U.S., there are no additional decisions upon which to wait. With respect to willfulness, ACS submits that discovery can be completed in 4-6 weeks, and that both damages and willfulness can be tried together in a one-week period. As a result, Medtronic's request for an indefinite stay should be denied.

II. ARGUMENT

    A. No Pending Matter Justifies a Stay

        1. The Cordis Arbitration is Irrelevant

Medtronic's lead argument is that the damages case should be stayed because Cordis and Medtronic have not yet resolved their arbitration over whether Cordis holds a license to the Boneau patents. (D.I. 652 at 2-3.) As the Court has already held, however, that arbitration was "singularly material" to Medtronic's claim for damages on its *Boneau* patents. (D.I. 444 at 3-4.) For the reasons set forth in ACS's opening memorandum (D.I. 649 at 5-6), that arbitration is irrelevant to the determination of Lau patent damages.

        2. Medtronic's Hope for the Lau Appeal Does Not Justify a Stay

Medtronic's second argument is that the damages/willfulness trial should be stayed pending appeal, in case Medtronic is successful on appeal. Under this proposal, there would *never* be damages trials until after liability cases were fully resolved on appeal. That is not,

however, the law, for "a stay of the damages phase of a patent trial [until after appeal of the liability phase under § 1292(c)(2)] is the exception rather the rule." *R.E. Serv. Co. v. Johnson & Johnston Assoc., Inc.*, 1995 WL 138545, *3 (N.D. Cal. Mar. 27, 1995) (Ex. 1). As such, the Federal Circuit "has repeatedly denied . . . motions to stay damages trials during appeals in patent cases." *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). Furthermore, ACS has the statutory right under 35 U.S.C. § 284 to collect damages for Medtronic's adjudicated infringement, and speculative appeal hopes do not justify a multi-year delay in this process.

### 3. The Boneau Appeal is Irrelevant

Medtronic's third argument is that the damages/willfulness trial on ACS's *Lau* patents should be stayed pending appeal of Medtronic's *Boneau* patent case. Of course, after thorough briefing and argument, this Court has already determined on summary judgment that none of ACS's stents infringe any of the Boneau patents. As discussed above, Medtronic's speculative and unlikely prospect of reversing this Court's decision on appeal does not justify delaying a determination of damages. Moreover, as the Court has frequently emphasized, the Lau and Boneau cases—while consolidated for convenience—are separate and distinct. Medtronic cites no authority for the remarkable proposition that a stay of damages is warranted wherever the patentee's product has been accused of infringing someone else's patents.[1] Indeed, if that were the case, there might never be damages trials in litigious industries such as this.

---

[1] Moreover, this Court has already held that a patentee may seek lost profits for infringement of its patents without regard to whether its products have been found to infringe other patents. *SciMed Life Sys., Inc. v. Johnson & Johnson*, No. 99-904, 2001 WL 935623, at *5 (D. Del. Aug. 15, 2001) (Ex. 2).

### 4. The Cordis Palmaz Case is Irrelevant

Medtronic's next argument is that Cordis and ACS cannot seek lost profits on the same accused products. To make this assertion, however, Medtronic must misunderstand the law of double recovery.

Briefly put, the law states that once a <u>patentee</u> recovers full compensation from one party for its infringing conduct, it cannot then seek additional compensation from the same or another party based on the same act of infringement. *See Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 503 (1964) (*Aro II*). The prohibition against double recovery for a patentee does not, however, mean that an infringer will not pay twice or even three times for its infringing conduct. Where an infringer, like Medtronic, elects to infringe multiple parties' patents, it does not get a discount for each act of infringement, but rather must make each patentee whole. Thus, Medtronic's assertion that it might pay damages on "160-165% of its sales" (D.I. 652 at 7), even if true, would be completely irrelevant.[2] *Id.* at 507 (a patentee is entitled to recover its losses "without regard to the question whether the defendant has gained or lost by his unlawful acts"). Indeed, it is black letter law that patent damages need not leave the infringer with any profit at the end of the day. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555. Medtronic chose to take this risk by infringing multiple parties' patents, and unfortunately for it, "what an infringer would prefer to pay is not the test for damages." *Id.* at 1555.

### 5. Medtronic's "Noninfringing Alternatives" Argument is Untimely

The Court did not bifurcate damages until August 26, 2004, which was *after* the parties had completed their expert reports. Therefore, when the parties filed their expert reports, they did so with the expectation that issues of liability and damages would be tried together. As such,

---

[2] The proposed merger between Johnson & Johnson and ACS is irrelevant for all infringing activities that have taken place to date, since the companies have been (and still are) separate and distinct.

- 3 -

RLF1-2877712-1

to the extent that Medtronic wanted to argue that it had access to "acceptable noninfringing alternatives," last year was the time to do so. Having chosen not to do so, it is too late now to open a separate phase of discovery—which Medtronic contends would involve myriad fact witnesses, technical experts, and damages experts—on these supposed hypothetical alternatives.

Moreover, Medtronic has no credible excuse, save neglect, for failing to address this issue last year in its expert reports. This Court's claim constructions in this case—including the requirement that cylindrical elements have "L<D"—are essentially identical to those issued 6 years ago by Judge Hamilton in *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*, 98-1108 (S.D. Ind. Oct. 15, 1999) and 2 years ago by the panel in the Cordis Arbitration. Medtronic can hardly claim surprise now.[3]

### B.    Medtronic Vastly Overstates the Remaining Discovery

Damages discovery will be complete in a matter of weeks. Specifically, damages fact discovery was completed in May 2004, and expert reports were completed in July 2004. The parties have already exchanged updated sales data so the experts can update their calculations (not the substance of their reports)[4], and expert depositions are scheduled to be complete by the end of June. The damages case will then be trial-ready.

---

[3]    In addition to being untimely, Medtronic's "noninfringing alternatives" argument is futile. With the exception of an unpopular "Wiktor" coil stent Medtronic sold for a short time in the 1990s, every Medtronic coronary stent ever approved by the FDA has been found to infringe the Lau patents. Simply put, Medtronic had no noninfringing alternatives. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (cited by Medtronic) ("Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not.").

[4]    ACS has agreed (to Medtronic's benefit) to subtract certain "government sales" from its damages claim and will do so promptly upon receiving accurate and auditable data from Medtronic. Unfortunately, the data Medtronic has produced thus far is internally inconsistent, reflecting an unexplained (and unexplainable) overnight ten-fold increase in government sales without any corresponding shift in overall revenue. And because there is virtually no detail in the data Medtronic has provided, ACS's experts are unable to reconcile the inconsistencies.

As discussed in ACS's opening brief, ACS believes that, after Medtronic elects whether to rely on an advice-of-counsel defense, damages discovery can be completed in 4-6 weeks. Moreover, Medtronic's argument regarding the number and location of witnesses is mendacious, given that the parties conducted more than 25 depositions in a four-week period last year. Given that far fewer witnesses will be involved, willfulness discovery can certainly be completed in a similar timeframe.

### C.     Separate Trials Will Not Unfairly Prejudice Medtronic

Medtronic also implies that bifurcation of damages is impermissible, by asserting that having different juries decide damages/willfulness and liability would be prejudicial. But well-settled law is directly to the contrary. *See, e.g., Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (bifurcating liability and damages facilitates juror understanding by presenting information in an easy-to-understand manner and limiting the number of issues facing each jury); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984) ("separate trials will reduce jury confusion [and] tend to *avoid prejudice*") (emphasis added); *see also Princeton Biochemicals Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 257-58 (D.N.J. 1997) (bifurcation warranted because presenting liability and damages issues concurrently presents the potential for significant prejudice, jury confusion, and economic concerns; reasoning that the complexity of the underlying technology and liability issues in patent cases will likely confuse a jury); *Roberts v. Sears, Roebuck and Co.*, 1988 WL 107369, *1 (N.D. Ill. Nov. 11, 1988) (Ex. 3) ("The [district] court has discretion under *Fed. R. Civ. Pro. 42(b)* to order separate trials on the issues of liability and damages 'in furtherance of convenience or to avoid prejudice, or when separate trials will be

---

ACS is optimistic that Medtronic will provide accurate and complete government sales data in the near future, so that the parties will not need to further burden the Court on this issue.

- 5 -

conducive to expedition and economy.'"). In fact, the Federal Rules specifically promote bifurcation as a useful mechanism to "avoid prejudice." Fed. R. Civ. P. 42(b).

Moreover, bifurcation certainly does not inherently prejudice defendants, as Medtronic seems to suggest. Indeed, as a plaintiff, Medtronic *opposed* bifurcation of the Boneau patent case when the defendants requested it, trumpeting its alleged right to a speedy recovery. (D.I. 380.) Medtronic's recent change of heart thus appears purely result-oriented.

### D.    Trial Can Be Completed in One Week

As the Court will recall, the entire liability trial in this case, involving all aspects of infringement and validity for 12 claims from 4 patents and 12 accused Medtronic products, was completed easily within a two-week time period. Indeed, the parties presented their collective cases in less than 32 hours total (excluding time charged against ACS for an unavailable witness). There is therefore no reason that the damages/willfulness trial should take more than one week. Medtronic's protestations to the contrary are simply an attempt at delay.[5]

In any event, ACS bears the burdens of proof on both damages and willfulness and can present its case within the practical constraints of a one-week trial. So too can Medtronic.

### E.    Medtronic's "Timing" Argument Undermines Its Request for a Stay

As ACS will establish in its Opposition to Medtronic's Motion for Judgment as a Matter of Law (JMOL), Medtronic's "timing" argument does not have merit. ACS presented more than ample information to support the jury's determination of infringement.

The simple fact that Medtronic has made this argument, however, counsels *against* a stay. As explained in ACS's opening brief (D.I. 649 at 7-8), Medtronic's theory would preclude an

---

[5]    Medtronic's argument for a longer trial appears premised almost purely on its apparent intent to retry many of the liability issues. Here, Medtronic misses the point entirely. The liability trial is finished and Medtronic has already lost on all issues. While the damages jury will certainly need to be provided some contextual background, re-hashing liability arguments would defeat the entire purpose of bifurcation in the first place.

interlocutory appeal before the damages trial, since the case would not be "final" under 28 U.S.C. § 1295(a)(1). Nor would it qualify for the exception to the "finality" rule, 28 U.S.C. § 1292(c)(2), which allows an interlocutory appeal in a patent infringement action that is "final except for an accounting." (D.I. 649 at 8-9.)

Moreover, if (somehow) the liability issues were to go up on appeal, Medtronic may argue that there was insufficient evidence of the "timing" of sales to support a judgment of infringement. Rather than create unnecessary issues for appeal (regardless of their merits or lack thereof), the Court can moot this issue by simply holding a damages trial as expeditiously as reasonably possible, which would yield an unquestionably final and appealable judgment.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in ACS's Memorandum Regarding Damages (D.I. 649), ACS respectfully requests that the Court schedule a one-week trial on damages and willfulness as soon as reasonably possible.

Dated: May 18, 2005

Of Counsel:
J. Michael Jakes
Gerald F. Ivey
Michael A. Morin
FINNEGAN, HENDERSON, FARABOW
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, D.C. 20005
(202) 408-4000
(202) 408-4400

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne S. Gaza (#4093)
gaza@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7509
*Attorneys for Advanced Cardiovascular Systems, Inc. and Guidant Sales Corporation*