# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.
1995 WL 138545 (N.D.Cal.)
(Cite as: 1995 WL 138545 (N.D.Cal.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. California.
R.E. SERVICE CO., INC., a California corporation,
Plaintiff,
v.
JOHNSON & JOHNSTON ASSOCIATES, INC., a
New Hampshire corporation, Defendants.
JOHNSON & JOHNSTON ASSOCIATES, INC., a
New Hampshire corporation,
Counterclaimant,
v.
R.E. SERVICE CO., INC., a California corporation
and Mark Frater, an
individual, Counterdefendants.
C 92-20672 RPA/PVT.

March 27, 1995.
David Slaby, Ken Kaslow, Fenwick & West, Palo Alto, CA.

Fay E. Morisseau, M. Patricia Thayer, Matthew Weil, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, A Professional Corporation, San Francisco, CA.

John L. Dupre, Richard A. Wise, Hamilton, Brook, Smith & Reynolds, P.C., Lexington, MA.

*ORDER DENYING MOTION TO RECONSIDER ORDER MODIFYING INJUNCTION AND MOTION TO
STAY DAMAGES PHASE OF TRIAL AND MONETARY DAMAGES AWARDED IN ORDER FINDING RES
IN CONTEMPT*

AGUILAR, District Judge

*1 Defendants, by way of motion, seek reconsideration of the portion of the court's Order re Post-Trial Motions of January 26, 1995, amending the prohibitory injunction. Both R.E. Service Co., Inc. ("RES") and Mark Frater request that the court reconsider its ruling granting Johnson & Johnston Associates, Inc.'s ("JJA") Motion to Amend the judgment. In this ruling, the court changed the injunction which first prohibited a product made with a band of adhesive which formed a "continuous seal." Now the injunction prohibits the making of a product which forms a "substantially continuous band."

Further, RES and Frater seek an order entering a stay of both the damages phase of the trial and the monetary aspects of the contempt order this court entered on January 25, 1995. RES and Frater seek a stay pending appellate review.

The court has taken the motions under submission without hearing oral argument from the parties. Having considered all papers and good cause appearing, the court denies RES' and Frater's motions in their entirety.

*FACTUAL BACKGROUND*
As was set forth in this court's prior order, this case arises out of a patent dispute. Both RES and JJA claim to have been the first to invent a process for facilitating the manufacture of printed circuit boards ("PCB")

RES brought this declaratory judgment action seeking a determination that RES's AC3 and AC2 products did not infringe United States Patent No. 5,153,050 (the "'050 patent"). RES also sought a declaration that the '050 patent held by JJA was invalid. JJA counterclaimed against RES for patent infringement, and against its president, Frater, for inducement to infringe. JJA further alleged that defendants had acted in wilful disregard of JJA's rights under the '050 patent.

The court bifurcated the issue of damages in pretrial proceedings. The jury trial on the issues of liability and wilfulness began on June 24, 1994. Closing arguments were heard on July 12, 1994. After the presentation of evidence, the parties made a variety of Federal Rules of Civil Procedure 50(a) motions for judgment as a matter of law. At that time the court denied the motions and the case went to the jury.

On July 14, 1994, after a day of deliberations, the jury rendered a verdict against RES and Frater. The jury found that the '050 patent was valid. The jury found that RES had infringed claims 1, 2, and 7 of the patent by making or selling its AC3 and AC2 products. The jury also found that Frater had induced such infringement. The jury declined, however, to enter a verdict of wilfulness against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 138545 (N.D.Cal.)
(Cite as: 1995 WL 138545 (N.D.Cal.))

Page 2

either defendant.

On July 29, 1994, the court signed a partial judgment based on the jury's verdict. The partial judgment was entered on August 4, 1994. All post trial motions were filed within the time limit set by the Federal Rules. See Fed.R.Civ.P. 6 and 59. Good cause appearing, on January 25, 1995, the court entered its "Order Re Post Trial Motions." The court found that both Frater and RES were guilty of wilful infringement. The court granted JJA's motion for judgment as a matter of law as to the wilfulness issue.

*2 In keeping with the jury's findings, the court further broadened the language of its injunction. The court chose to follow the language contained in Jury Instructions No. 15.

Specifically, the court altered paragraph four of the injunction. The court also named Frater, personally, in the injunction.

The new paragraph four of the injunction contained in the partial judgment now reads:
> R.E. Service and its officers, directors, employees, agents, representatives, successors and assigns, in their official capacity with R.E. Service, are permanently enjoined from making, using or selling a laminate constructed of a sheet of copper foil and a sheet of aluminum, one surface of each of the copper sheet and the aluminum sheet being essentially uncontaminated and engageable with each other at an interface, and a band of flexible adhesive which forms a substantially continuous band joining the uncontaminated surfaces together at their borders and defining a substantially uncontaminated central zone inwardly of the edges of the sheets.
> Mark Frater is specifically enjoined from inducing the above described acts.

*LEGAL ANALYSIS*
*I. Reconsideration of the order*

Ninth Circuit law permits motions for reconsideration in the following situations:
"A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior position. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."
All Hawaii Tours Corp. v. Polynesian Cultural Center, 116 F.R.D. 645, 648 (D.Hawaii, 1977), reversed in part on other grounds, 855 F.2d 860.

These strict limitations on the reconsideration of motions ensure judicial economy and encourage finality in the progress of litigation.

In applying the three-pronged test set forth in *All Hawaii*, the court finds that RES and Frater have not met their burden.

First, the motion to reconsider raises the same legal issues as does their previous submissions to the court.

Second, RES and Frater have failed to mention any new facts relevant to the issues raised in the prior motion. Thus, no new evidence has been provided to the court that would make a motion to reconsider appropriate.

Third, RES and Frater have not shown that the prior order was clear error. Nor have the moving parties shown that the prior order caused manifest injustice to any of the parties. RES and Frater have merely repeated arguments articulated in their prior opposition to the Motion to Find Wilfulness as a Matter of Law and the Motion to Amend Judgment.

In their papers, RES and Frater (hereinafter, for purposes of this order "RES") cite no new facts or legal issues. RES claims that this court's prior order should be reconsidered to correct clear error or prevent manifest injustice. RES then reiterates the arguments that the court has already considered and discussed in rendering its prior decision in this matter. The parties have all previously and thoroughly addressed issues relating to the language of the injunction. RES' argument is that the prohibitory injunction is vague and confusing. The parties and the court have previously thoroughly discussed this allegedly vague language. The court held a three hour Order to Show Cause Re Contempt Hearing on an alleged violation of the court's first injunction. At this hearing, the parties presented much argument and briefing on the correct interpretation of the injunctive language. All parties attended and participated in this evidentiary hearing. The arguments which RES raises in its Motion to Reconsider are mere repetitions of prior arguments.

*3 The court finds that RES has not (1) cited any intervening change in the law; (2) set forth any new facts; nor (3) shown any clear error made by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 138545 (N.D.Cal.)
(Cite as: 1995 WL 138545 (N.D.Cal.))

Page 3

court or any manifest injustice caused by the prior order. RES has failed to articulate any basis for this court to reconsider its prior ruling.

The court denies the Motion to Reconsider.

*2. Motion to Stay*

RES requests this court to stay (1) the damages phase of the trial and (2) the monetary aspects of the contempt order pending RES' appeals.

The court first will address the proposed stay of the damages phase of the trial first.

RES relies on *Landis v. North American Co.* 299 U.S. 248, 254 (1936) for the proposition that "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, however, concerns a stay pending a simple accounting.

The *Landis* court held that a stay pending an accounting may be useful. This is not always true as can be seen in *Icyclair, Inc. v. Dist. Co.*, 93 F.2d 625 (9th Cir.1937). The *Icyclair* case also involved an accounting action. The court, however, allowed the accounting to proceed simultaneously with an appeal of a determination on patent validity. Neither case is directly on point, however, because the second phase of the trial involves much more than a simple accounting. Rather, the second phase of the trial at bar will involve a full determination of damages.

After citing *Landis, supra*, RES failed to make a showing that a stay is merited for reasons other than a pending accounting. A court has the discretion to stay or not stay proceedings pending before it. In fact, however, a stay of the damages phase of a patent trial is the exception rather than the rule. See Federal Rule of Civil Procedure 62(a). A stay will only be granted upon a proper showing that it will not harm the non-moving party. Where there is a "fair possibility" that the stay will damage the other party, the party seeking the stay must demonstrate a "clear case of hardship or inequity" to obtain a stay. *Landis, supra* at 255.

The Ninth Circuit has directed that, before granting a stay, the district court must weigh the "competing interests" to be affected. In addition to considering the "possible damage which may result from the granting of a stay," the court should also consider the "hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Filtrol Corp. v. Kelleher* 467 F.2d 242 (9th Cir.1972), *cert. denied,* 409 U.S. 1110. (1973). RES has not pointed to any harm which might result from going forward with the case. RES has not made out the "clear case of hardship or inequity" required under *Landis, supra*. In the case at hand, there is more than a "fair possibility" that a stay would prejudice JJA. The court adjudged RES to be a wilful infringer. The court ordered RES to discontinue the sale of infringing product. Yet, RES wilfully disregarded that order. The court found RES to be in contempt of this Court's first prohibitory injunction.

*4 In contrast, it appears that a stay could substantially harm JJA. If the court were to grant a stay, RES could potentially fold its business or transfer its remaining assets so as to become judgment proof. Furthermore, the length of time to appeal this matter would require a lengthy stay. JJA would be unduly harmed by such a long delay. JJA is now entitled to compensation for RES' patent infringement and to the fines awarded in the contempt proceeding. Any delay of this compensation is not merited.

In addition to the above reasons, even if the Federal Circuit reversed this court's judgment, the most RES can hope to achieve is a new trial. RES has no way of obtaining an outright victory in the Court of Appeals. RES is not seeking a judgment as a matter of law at the appellate level. In any new trial that might take place, damages will be determined along with liability.

RES primarily argues that needless time and money would be expended if the court should proceed with this case only to have the liability judgment overturned on appeal.

This court, however, did not make its decision on the Post Trial Motions lightly. Only after much careful consideration and research, did it determine that RES and Frater wilfully infringed JJA's patent.

The court finds that delaying the damages phase of the trial would merely prevent JJA from receiving the damages to which JJA is entitled without good cause.

The court will now address RES' request for stay of the monetary aspects of the court's January 25, 1995

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 138545 (N.D.Cal.)
**(Cite as: 1995 WL 138545 (N.D.Cal.))**

Page 4

Order in re Contempt

The Supreme Court has identified four factors to be considered when determining whether a court should stay an order pending appeal:
> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987).

The application of all four of these factors to this case mitigate against the stay that RES seeks. RES has made no showing of likelihood of success on the merits. The evidence of willful contempt of the court's injunction is plain to this court. The court made a fact-based determination. The Court of Appeal is less apt to reverse such a factual determination. Further, the likelihood of harm to RES is slim. Even if RES does obtain a reversal of the Order re Contempt, RES can be made whole by JJA's repayment of the monetary damages. It is clear that JJA is financially able to do this.

On the other hand, RES' payment of the contempt fines to JJA would serve the public interest. The policy behind the patent statute which this court is enforcing, is best served by denying the stay. The court needs to demonstrate to RES and all adjudged infringers that contempt proceedings are serious. Wilful contempt of a court's specific injunction against continued infringement will be remedied swiftly by the imposition of monetary sanctions.

## CONCLUSION
*5 The court denies defendants' Motion to Reconsider and defendant's Motion For Stay in their entirety.

IT IS SO ORDERED.

1995 WL 138545 (N.D.Cal.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d
2001 WL 935623 (D.Del.)
(Cite as: 2001 WL 935623 (D.Del.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
SCIMED LIFE SYSTEMS, INC., Boston Scientific
Scimed, Inc., Boston Scientific
Corporation and Medinol, Ltd., Plaintiffs,
v.
JOHNSON & JOHNSON, Cordis Corporation and
Johnson & Johnson Interventional
Systems, Inc., Defendants.
No. Civ.A. 99-904-SLR.

Aug. 15, 2001.

Josy W. Ingersoll, and Christian Douglas Wright, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Plaintiffs, Charles R. Brainard, George E. Badenoch, Walter E. Hanley, Jr., Edward T. Colbert, and Douglas E. Ringel, of Kenyon & Kenyon, New York, New York, of counsel.

Steven J. Balick, and Steven T. Margolin, of Ashby & Geddes, Wilmington, Delaware, for Defendants, Gregory L. Diskant, William F. Cavanaugh, Jr., Michael J. Timmons, and Russell W. Faegenburg, of Patterson, Belknap, Webb & Tyler, LLP of New York, New York, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 In this consolidated action, plaintiffs Scimed Life Systems, Inc. ("Scimed"), Boston Scientific Scimed, Inc. ("BSSI"), Boston Scientific Corporation ("BSC"), and Medinol, Ltd. ("Medinol") allege that defendants Johnson & Johnson ("J & J"), Cordis Corporation ("Cordis"), and Johnson & Johnson Interventional Systems, Inc. ("JJIS") willfully infringe and induce infringement of United States Patent Nos. 5,733,303 (the " '303 patent"), 5,843,120 (the " '120 patent"), and 5,972,018 (the " '018 patent") (collectively, the "Medinol patents"). The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

Currently before the court are various motions for summary judgment. [FN1] For the following reasons, the court shall deny plaintiffs' motion for summary judgment of literal infringement of the asserted claims of the '303 and '018 patents by the BX Velocity stent (D.I.152), deny defendants' motion for summary judgment of non-infringement of claims 13 and 17 of the '120 patent by the Crown and Mini-Crown stents (D.I.140), deny defendants' motion for summary judgment of non-infringement of the asserted claims of the Medinol patents by the BX Velocity stent (D.I.146), grant plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by United States Patent No. 5,102,417 (the " '417 patent") (D.I.154), deny as moot plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by United States Patent No. 5,449,373 (the " '373 patent") (D.I.148), grant plaintiffs' motion for summary judgment that the stent designs in Figures 13, 14a and 14b of Application Serial No. 08/246,320 are not prior art (D.I.150), and deny defendants' motion for summary judgment precluding lost profits damages for hypothetical United States sales of the NIR stent. [FN2] (D.I.142)

FN1. Also pending before the court is defendants' motion for leave to file an amended answer and counterclaim. (D.I.117) Defendants' motion is denied as untimely.

FN2. Defendants concede that if the court construes the asserted claims of the Medinol patents to disclaim the spiral or helical connectors of the '417 patent, then the '417 patent does not anticipate the Medinol patents. The court has adopted that construction and, therefore, plaintiffs' motion that the '417 patent does not anticipate the asserted claims is granted. Furthermore, defendants have agreed not to assert the '373 patent as an anticipatory reference, rendering plaintiffs' motion that the '373 patent does not anticipate the asserted claims moot.

II. BACKGROUND

The Medinol patents, invented by Henry Israel and Gregory Pinchasik and assigned to Medinol, claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
2001 WL 935623 (D.Del.)
(Cite as: 2001 WL 935623 (D.Del.))

certain flexible expandable stents. The Medinol patents share the same drawings and essentially the same specification, and are described as continuations of a series of applications beginning with Application Serial No. 282,181, filed on July 28, 1994, and continuations-in-part of Application Serial No. 213,272, which was filed on March 17, 1994 and issued as the '373 patent. Plaintiffs allege that defendants' BX Velocity, Crown, Mini-Crown and Corinthian stents infringe claims 6, 7, 8, 9, 10, 12 and 13 of the '303 patent, claims 13 and 17 of the '120 patent, and claims 35, 39, 47, 60 and 63 of the '018 patent.

A. The Burmeister Application

During May 1994, Scimed engineers Paul Burmeister, Brian Brown, Charles Eteneuer and Paul Fordenbacher ("Applicants") evaluated the concept of a hybrid stent that would partially self-expand and then fully expand with a balloon. Applicants filed for a patent on their invention on May 19, 1994 (the "Burmeister Application") that included several pages of drawings (D.I.156, Ex. M). Although Applicants indicated that they intended to send eighteen sheets of drawings, the Patent Office file reflects that only fifteen sheets were included. Those fifteen sheets contained Figures 1-10, 11b, 12 and 13, but not Figures 11a, 14a or 14b. [FN3] (Id.) On August 19, 1994, new drawings were submitted that also included Figures 11a, 14a and 14b. (Id.) On November 28, 1995, the Patent Office issued a Notice of Abandonment for Applicant's failure to respond to an April 26, 1995 Office Action. [FN4] (Id.) On May 18, 1995, Applicants filed an International PCT Application based on the Burmeister Application, but different drawings were substituted as Figures 13 and 14. The PCT Application was first published on November 30, 1995 and issued as European Patent Specification EP 0759730B1 on February 10, 1999. (D.I.170, Ex. 49)

> FN3. Defendants contend that Applicants did include Figures 13, 14a and 14b in their May 19, 1994 submission, and the Patent Office later misplaced the drawings (D.I. 167 at 12).

> FN4. Plaintiffs contend that no further work was performed on Figures 13, 14a and 14b prior to the filing date of the Medinol patents which, for the purpose of the motion for summary judgment regarding the Burmeister Application, the parties agree is July 28, 1994. (D.I. 151 at 4)

III. STANDARD OF REVIEW

*2 A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' Matsushita, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. Infringement by Defendants' BX Velocity, Crown and Mini-Crown Stents

A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed.Cir.1993). "In order for a court to find infringement, the plaintiff must show the presence of every ... [limitation] or its substantial equivalent in

the accused device." *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed.Cir.1994). The determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998). An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents. *See id.* A finding of infringement under the doctrine of equivalents may be barred, however, if the patentee attempts to reclaim subject matter that it previously surrendered during prosecution. *See Hilgrave Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1355 (Fed.Cir.2000) ("[P]rosecution history estoppel bars recapture of subject matter surrendered during prosecution.")

*3 The court finds that defendants' BX Velocity stent does not literally infringe claim 6 of the '303 patent. The "second end" of the BX Velocity's "first flexible compensating member or flexible link" does not "communicat[e] with" the "first end" of its "third member having a longitudinal component." ('303 patent, claim 6(g)) Similarly, the "first end" of the BX Velocity's "second flexible compensating member or flexible link" does not "communicat[e] with" the "second end" of its "second member having a longitudinal component." ('303 patent, claim 6(h)) The ends of these "flexible compensating members or flexible links" actually "communicat[e] with" the structural elements of other cells. ('303 patent, claim 6(e), (f)) Thus, because claims 7, 8, 9, 10, 12 and 13 ultimately depend on claim 6 of the '303 patent, the court concludes that defendants' BX Velocity stent does not literally infringe any of the asserted claims of the '303 patent. Plaintiffs are limited to alleging that the BX Velocity stent infringes those claims only by the doctrine of equivalents. [FN5]

> FN5. Because the jury may only find that the BX Velocity stent infringes the "communicating with" limitation by the doctrine of equivalents, the court will create a detailed verdict form, separating the limitations of claim 6 into individual questions.

The court also finds that there is a limited range of equivalents on the "flexible compensating member or flexible link" limitation of claim 6 of the '303 patent. Plaintiffs surrendered all diagonal, helical or spiral connector members when they distinguished the '417 patent during prosecution. (D.I. 137, Ex. 9 at 00059-60; D.I. 138, Ex. 3 at 00175-76) Consistent with the court's claim construction, therefore, plaintiffs are estopped from arguing that any diagonal, helical or spiral element, i.e., a connector member that connects adjacent cells, is a "flexible compensating member or flexible link." With regard to the BX Velocity stent, the court concludes that there are genuine issues of material fact as to whether the "N-regions" of the stent infringe the "flexible compensating member or flexible link" limitation of claim 6 literally or by the doctrine of equivalents.

Finally, the court finds that there are genuine issues of material fact as to whether the BX Velocity, Crown or Mini-Crown stents infringe the asserted claims of the '120 patent, and whether the BX Velocity stent infringes the asserted claims of the '018 patent.

B. Figures 13, 14a and 14b of the Burmeister Application as Prior Art

Plaintiffs argue that Figures 13, 14a and 14b of the Burmeister Application are not prior art to the Medinol patents under 35 U.S.C. § 102(g), which states that an applicant is not entitled to a patent if

> before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

*4 (Emphasis added) Specifically, plaintiffs contend that although the Burmeister Application was arguably abandoned after the filing date of the Medinol patents, that abandonment vitiated the "constructive" reduction to practice created by the filing of the Burmeister Application. Thus, according to plaintiffs, the Burmeister invention was never "made" since it was never reduced to practice. [FN6] *See In re Costello*, 717 F.2d 1346, 1350 (Fed.Cir.1983) ("[I]t has long been settled, and we continue to approve the rule, that an abandoned application, with which no subsequent application was copending, cannot be considered a constructive reduction to practice."). Defendants cite case law to the contrary, that an abandonment of an application must occur prior to the filing date of a patent in order to exclude that application as prior art pursuant to Section 102(g). *See Allen v. Brady*, 508 F.2d 64, 67 (7th Cir.1974) ("As we read the language [of Section

102(g) ], the abandonment is irrelevant unless it occurred 'before the applicant's invention.' The use of the pluperfect tense--'had not abandoned'-- plainly refers to an abandonment which occurred 'before the applicant's invention." ').

> FN6. The parties agree that Figures 13, 14a and 14b of the Burmeister Application were never actually reduced to practice. (D.I. 185 at 6)

Although defendants present a respectable argument based on statutory interpretation, their position directly contradicts one of the fundamental principles of patent law--that prior art be available to the public. See *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed.Cir.1984) ("That is the real meaning of 'prior art' in legal theory--it is knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in an art.") (emphasis added). See also *Graham v. John Deere Co.*, 383 U.S. 1, 6 (1966) (stating that no patent should be granted which withdraws from the public domain technology already publicly available). The Burmeister Application was abandoned and the relevant drawings were never revealed to the public, nor were they actually reduced to practice. The only reason the drawings are at issue now is because Scimed, licensed by Medinol, is a party to this action and produced the drawings in discovery. In the absence of a voluntary publication of the Burmeister Application, the drawings never would have surfaced as potential prior art. Therefore, the court grants plaintiffs' motion for summary judgment that the stent designs in Figures 13, 14a and 14b of the Burmeister Application are not prior art. [FN7]

> FN7. Moreover, adopting defendants' position would lead to the "anomalous" result of potentially depriving plaintiffs of their rights in the Medinol patents because they developed their inventions too soon, instead of after the abandonment of the Burmeister Application. See Donald Chisum, *Chisum on Patents* § 10.08[5] (2001).

C. Recovery of Lost Profits on Hypothetical Sales of the NIR Stent

Defendants have moved to preclude plaintiffs from presenting any evidence on lost profits based on sales of the NIR stent, arguing that plaintiffs should not be permitted to assert that its NIR stent was properly on the market as a non-infringing product. Defendants base their argument on the jury verdict rendered against plaintiffs and in favor of defendants in *Cordis Corp. v. Boston Scientific Corp.*, No. 97-550-SLR (D.Del. verdict rendered on Dec. 11, 2000) (the "97-550 case").

*5 The court concludes, however, that the jury verdict in the 97-550 case should not serve as an estoppel in this case. First, the issues tried in the 97-550 case are not the same issues that are going to be tried in the case at bar. Second, the adverse verdict is not a final one; given the possibility of the verdict being overturned in whole or in part on appeal, judicial economy suggests trying the case at bar on all issues. Finally, notions of equity support plaintiffs' position, that is, plaintiffs should not be precluded from presenting all issues just because defendants were the first to get to trial.

The court recognizes the complexities in these cases, but concludes that the case at bar should be tried without regard to the jury verdict returned in the 97-550 case. Therefore, defendants' motion for summary judgment precluding lost profits damages for hypothetical United States sales of the NIR stent is denied.

V. CONCLUSION

For the reasons stated, the court shall deny plaintiffs' motion for summary judgment of literal infringement of the asserted claims of the '303 and '018 patents by the BX Velocity stent, deny defendants' motion for summary judgment of non-infringement of claims 13 and 17 of the '120 patent by the Crown and Mini-Crown stents, deny defendants' motion for summary judgment of non-infringement of the asserted claims of the Medinol patents by the BX Velocity stent, grant plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by the '417 patent, deny as moot plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by the '373 patent, grant plaintiffs' motion for summary judgment that the stent designs in Figures 13, 14a and 14b of the Burmeister Application are not prior art, deny defendants' motion for summary judgment precluding lost profits damages for hypothetical United States sales of the NIR stent, and deny defendants' motion for leave to file an amended answer and counterclaim. An appropriate order shall issue.

ORDER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2001 WL 935623 (D.Del.)  
**(Cite as: 2001 WL 935623 (D.Del.))**

Page 5

At Wilmington, this 15th day of August, 2001, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment of literal infringement of the asserted claims of the '303 and '018 patents by the BX Velocity stent (D.I.152) is denied.

2. Defendants' motion for summary judgment of non-infringement of claims 13 and 17 of the '120 patent by the Crown and Mini-Crown stents (D.I.140) is denied.

3. Defendants' motion for summary judgment of non-infringement of the asserted claims of the Medinol patents by the BX Velocity stent (D.I.146) is denied.

4. Plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by the '417 patent (D.I.154) is granted.

5. Plaintiffs' motion for summary judgment that the asserted claims of the Medinol patents are not anticipated by the '373 patent (D.I.148) is denied as moot.

*6 6. Plaintiffs' motion for summary judgment that the stent designs in Figures 13, 14a and 14b of Application Serial No. 08/246,320 are not prior art (D.I.150) is granted.

7. Defendants' motions for summary judgment precluding lost profits damages for hypothetical United States sales of the NIR stent (D.I.142) and for leave to file an amended answer and counterclaim (D.I.117) are denied.

2001 WL 935623 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

1988 WL 107369                                                                                          Page 1
1988 WL 107369 (N.D.Ill.)
(Cite as: 1988 WL 107369 (N.D.Ill.))

H
Only the Westlaw citation is currently available

United States District Court, N.D. Illinois, Eastern Division.
Peter M. ROBERTS, Plaintiff,
v.
SEARS, ROEBUCK AND CO., Defendant.
No. 80 C 5986.

Oct. 11, 1988.

*MEMORANDUM OPINION*

KOCORAS, District Judge:

*1 This matter is before the court on plaintiff's motion for a single trial on the issues of liability and damages. During the prior trial of this action, a separate trial on liability was held prior to submitting the issue of damages to the same jury. Defendant submits that a bifurcated trial should again be granted on retrial pursuant to Fed.R.Civ.Pro. 42(b).

*DISCUSSION*

Defendant contends for several reasons that the trial should be bifurcated. Defendant first notes that should Sears be found not liable, a trial on damages would be unnecessary and, thus, save time and money for the court and the parties. Defendant next argues that due to the complex nature of the patent liability issues themselves, a separate trial on liability would assist the jury in keeping the issues straight. Defendant further points out that plaintiff's proposed "reasonable royalty" theory of determining damages is more complicated than the typical "lost profits" analysis of damages. *Slater Electric, Inc. v. Indian Head, Inc.*, 223 U.S.P.Q. 729, 731 (S.D.N.Y.1983). Thus, submitting to the jury this theory of damages in conjunction with the liability issues may ultimately confuse them. Finally, the defendant contends that in light of the expeditious nature of the first trial, a bifurcated retrial here would similarly advance the purposes of Rule 42(b).

Plaintiff, nevertheless, submits that undue prejudice could result should a juror in the liability trial realize that the jury would have to return for a second trial on damages should liability be found. Further, plaintiff contends that selection of a new jury for a trial on damages could prejudice the plaintiff. Finally plaintiff argues that a significant amount of evidence produced in a trial on liability will have to be duplicated in a trial on damages. Here, plaintiff specifically attempts to show that the burden of having to repeat evidence based on its reasonable royalty theory of damages outweighs the necessity of simplifying the issues for the jurors.

The court has discretion under Fed.R.Civ.Pro. 42(b) to order separate trials on the issues of liability and damages "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Thus, after careful consideration of the foregoing arguments and pleadings, this court finds that the trial should be bifurcated. Although it appears that some overlap between questions of liability and damages exists, this court believes that simplifying the jury's task in resolving the issues outweighs the potential burden of having them rehear some evidence. This court is not persuaded by plaintiff's argument that a jury may find for defendant merely to relieve itself of any further duties which may be required. Additionally, the same jury will decide damages if liability is found; there will be no need to duplicate evidence. If necessary, the damages portion of the trial will commence immediately after completion of the liability phase of the trial.

*2 It is therefore ordered that this case be bifurcated for a first stage trial on liability separate from a second stage trial on damages.

1988 WL 107369 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2005, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

I hereby certify that on May 18, 2005, I have sent by Federal Express the foregoing document to the following non-registered participants:

Raphael V. Lupo, Esquire
Donna M. Tanguay, Esquire
Mark G. Davis, Esquire
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005

Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
GAZA@rlf.com

RLF1-2877733-1