IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED CARDIOVASCULAR SYSTEMS, INC. and GUIDANT SALES CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 98-80 (SLR) (Consolidated with C.A. No. 98-314 (SLR) and |
| v. | ) ) ) | C.A. No. 98-316 (SLR)) |
| MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEDTRONIC'S OBJECTIONS TO AND MOTION
TO PRECLUDE ACS FROM INTRODUCING DEPOSITION
TESTIMONY FROM BRADLEY JENDERSEE AND ROBERT LASHINSKI**

Advanced Cardiovascular Systems, Inc. and Guidant Sales Corporation ("ACS") designated snippets of testimony (from depositions taken years before this case was even filed) that are irrelevant to whether ACS committed inequitable conduct, which is the only issue to be tried in this phase of the case.

Messrs. Jendersee and Lashinski are former employees of Arterial Vascular Engineering, or "AVE" (Medtronic's predecessor). Notwithstanding that ACS deposed Messrs. Lashinski and Jendersee in this action for days, ACS designated their deposition testimony from three prior, completely unrelated actions -- each of which involved different parties and different issues than in this case.

Medtronic hereby objects to ACS's designations from prior, unrelated cases and moves to preclude ACS from introducing that testimony. Even ACS's designations from this case lack foundation, are irrelevant, and should be excluded.

**STATEMENT OF FACTS**

The issue to be tried before the Court in this phase of the case is whether ACS's Lau patents are unenforceable due to inequitable conduct. ACS, however, seeks to offer deposition testimony denigrating early commercial embodiments of Mr. Bonneau's invention, testimony which is plainly irrelevant to ACS's conduct before the Patent Office. Moreover, none of ACS's designations provides any foundation for who Messrs. Jendersee and Lashinski are, nevermind how they were in a position to know anything about Mr. Bonneau or his invention. As discussed below, the designated testimony from the *Cordis, DiMassa* and *Anwar* cases was developed in those earlier litigations, which have nothing to do with the issues in this case.

**ARGUMENT**

**I.    THERE IS NO BASIS FOR ACS TO USE PRIOR TESTIMONY BECAUSE ACS HAD THE OPPORTUNITY TO DEPOSE – AND DID DEPOSE – MESSRS. JENDERSEE AND LASHINSKI IN THIS CASE.**

ACS's attempt to introduce the testimony of Messrs. Lashinski and Jendersee from other cases is improper because ACS had a full and fair opportunity to depose them *in this case*. In fact, ACS deposed Mr. Jendersee for two days in this case on May 6 and 7, 2004, double the presumptive time under Fed. R. Civ. P. 30. Likewise, ACS deposed Mr. Lashinski for two days in this case, on May 3 and 4, 2004. Thus, ACS should not have to resort to testimony from other cases involving different parties, different issues and different motivations when the testimony was readily available to ACS from depositions taken in this case. ACS had every opportunity to develop their testimony in the context of this case. Medtronic also has objections to some of the designated testimony from this action based on foundation, relevance, and hearsay grounds. Medtronic's objections are set forth in Ex. A.

II.   **THE DEPOSITION TESTIMONY OF MESSRS. JENDERSEE AND LASHINSKI FROM PRIOR UNRELATED CASES IS INADMISSIBLE IN THIS CASE.**

ACS has designated deposition testimony from *Anwar v. AVE* (U.S. Dist. Tex., Case No. 96-952323-M), *Cordis v. ACS* (U.S. Dist. Del., Case No. 97-550-SLR), and *DiMassa v. Stertzer* (Cal. Sup. Ct., Case No. 222363).

Testimony from other proceedings is admissible *only if*: (1) the declarant is unavailable; (2) the testimony was taken at a hearing, deposition, or civil action or proceeding; and (3) the party against whom the testimony is now offered, or its predecessor in interest, had an opportunity *and similar motive* to develop the testimony by direct, cross, or redirect examination.  See Fed. R. Evid. 804(b)(1); *New Jersey Turnpike Authority v. PPG Indus., Inc.*, 197 F.3d 96, 110 (3d Cir. 1999) (emphasis added).

Determining similarity of motive requires evaluating: (1) the similarity of issues, (2) the purpose for which the testimony is offered, and (3) the context or circumstances in which the testimony is given.  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1252 (E.D. Pa. 1980), *aff'd in part, rev'd in part on other grounds*, 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986).  Here, the issues that were presented in the three prior cases were completely different from those presented here; the purpose for which the testimony was offered in the prior cases was much different from the purpose here; and the content and circumstances in which the testimony was given in those three prior cases also were much different than from here.

*Cordis*

In the *Cordis* case, Cordis alleged that certain of Medtronic's early stents (the MicroStent II, GFX and GFX II stents) infringed Cordis's '984 and '762 patents (also known as the Palmaz patents).  The patents and the claims that were at issue in the *Cordis* case, the Court's

3

actual findings in that case and the basis for those findings were all different from those in this case. Thus, in the *Cordis* case, the testimony of Messrs. Jendersee and Lashinski was directed to issues that had no bearing at all on the issues that are being tried in this case. As a result, Medtronic had no motive to cross-examine Messrs. Jendersee and Lashinski to develop their testimony as it related to the inequitable conduct issues that are now pending here. Medtronic's focus in the *Cordis* case was to develop arguments for why the Palmaz patents do not read on Medtronic's products and why *Cordis'* Palmaz patents are invalid -- not to argue or appeal issues that would be relevant, if ever, only in connection with how *ACS's* Lau patents were procured by inequitable conduct. Indeed, this Court rejected ACS's arguments that the findings in *Cordis* could be applied as collateral estoppel in this case (D.I. 518). The Court specifically found that ACS had not proved the issues in this case are identical to *Cordis I* (*id*. at 6).

For example, ACS designated testimony from Mr. Lashinski's August 11, 1999 deposition that the MicroStent PL (the first commercial embodiment of Mr. Bonneau's invention) allegedly was unsuccessful and had numerous shortcomings (Ex. B). What is relevant here -- where inequitable conduct is at issue -- is what is disclosed in the Boneau patent, not the measure of success of AVE's first commercial embodiment. Moreover, even if this testimony were somehow relevant, ACS has not provided any foundation for who Mr. Lashinski is, what position he had, and whether that position gave him any basis to discuss the MicroStent PL.

*DiMassa*

The *DiMassa* case was a trade secrets case brought by Rodolfo DiMassa and others alleging that Michael Bonneau, and others, misappropriated trade secrets from Stenticor (a company that they had formed to development the prior art DiMassa sleeve, an entirely unrelated stent technology). The *DiMassa* case was not a patent dispute. The issues there were entirely

4

different from any issues in this case. Thus, any testimony from *DiMassa* is improper because Medtronic had no incentive to develop evidence concerning the issues in this case.

ACS designated testimony from Mr. Lashinski's March 21, 2001 deposition in the *DiMassa* case regarding the quality of Mr. Bonneau's prototype stents (Ex. C). This testimony does nothing but show that AVE and Medtronic had to do development work to turn the Boneau stent into a commercial product. What it takes to get a product to the marketplace, however, has nothing to do with the materiality of the Boneau patent, what it discloses, or ACS's intent to deceive the examiner. And as discussed above, even if this testimony were somehow relevant, ACS has not provided any foundation for it.

*Anwar*

The *Anwar* case was a shareholder derivative action in which certain shareholders of ESS (a company formed to develop the Boneau technology) brought suit against Dr. Simon Stertzer and others alleging that the majority shareholders had dealt unfairly with minority shareholders when they arranged for the sale of certain assets (including the pending application that matured into the Boneau patents) from ESS to AVE (predecessor to Medtronic). The *Anwar* case was not a patent infringement case. Indeed, it did not even relate directly to patents, but instead, it related primarily to the sale of the rights in a pending patent application. Thus, the issues presented in the *Anwar* case were completely different from those presented in this case.

In the *Anwar* case, neither Medtronic nor AVE had any motivation at all to develop the testimony of Messrs. Jendersee and Lashinski with respect to the materiality of the disclosure of the Boneau prior art as it relates to ACS's patents. Thus, their deposition testimony in that prior case has no bearing on the issues presented in this case.

Below are just a few examples of the improper testimony that ACS has designated from the *Anwar* case:

5

        a)    *Mr. Jendersee's July 7, 1997 deposition* (Ex. D). ACS designated testimony related to the amount of work AVE had to do to commercialize the technology (*id*. at 150:14-152:4). This testimony is simply irrelevant to this lawsuit. As discussed above, the work that is done to get a product to the marketplace has nothing to do with the objective disclosure of the Boneau patent and whether it is material prior art to the Lau patents.

        b)    *Mr. Jendersee's July 29, 1997 deposition* (Ex. E). ACS again designates testimony that the MicroStent PL, the first commercial embodiment of Mr. Bonneau's invention, was allegedly unsafe and had weaknesses. Again, because the issue here is ACS's inequitable conduct, what is relevant is what is disclosed in the Boneau patent, not the commercial embodiment.

        c)    *Mr. Jendersee's July 30, 1997 deposition* (Ex. F). ACS designated pages 737:5-738:9, where Mr. Jendersee testifies that the stent technology that was transferred from ESS to AVE in 1993 allegedly had little value, and that ESS received a cease and desist letter from the FDA because it allegedly implanted devices without product liability insurance. Not only is this in violation of the Court's ruling regarding Medtronic's motion in limine number two (to exclude certain irrelevant and unduly prejudicial evidence) (D.I. 547), it has nothing at all to do with this case.

        As is the case with the other designations discussed above, even if Mr. Jendersee's testimony were somehow relevant, ACS has not provided any foundation for it.

## CONCLUSION

For the foregoing reasons, Medtronic respectfully requests that this Court preclude ACS from introducing the testimony of Messrs. Lashinski and Jendersee from prior unrelated lawsuits.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Karen Jacobs Louden
klouden@mnat.com
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 North Market Street
Wilmington, Delaware 19899
(302) 658-9200
Attorneys for Medtronic Vascular, Inc. and
Medtronic USA, Inc.

OF COUNSEL:

Raphael V. Lupo
Donna M. Tanguay
Mark G. Davis
James G. Rizzo
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005
(202) 756-8000

Fay E. Morisseau
Matthew F. Weil
McDERMOTT WILL & EMERY LLP
18191 Von Karman Ave., Ste. 400
Irvine, CA 92612-7107
(949) 851-0633

June 7, 2005

468394

CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2005, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to Frederick L. Cottrell, III.

I further certify that on June 7, 2005, I caused to be served copies of the foregoing document on the following in the manner indicated:

**BY HAND**

Frederick L. Cottrell, III
Anne Shea Gaza
**Richards Layton & Finger**
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

/s/ Karen Jacobs Louden
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com