# EXHIBIT A

Appeal Nos. 05-1280, -1281, -1282

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADVANCED CARDIOVASCULAR SYSTEMS, INC.
and GUIDANT SALES CORPORATION,

        Plaintiffs-Appellees,

v.

MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC.,

        Defendants-Appellants.

MEDTRONIC VASCULAR, INC.,

        Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC SCIMED, INC. (formerly known as Scimed Life Systems, Inc.),

        Defendants-Appellees,

and

MEDINOL LTD.,

        Defendant-Appellee.

MEDTRONIC VASCULAR, INC.,

        Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC SCIMED, INC. (formerly known as Scimed Life Systems, Inc.),

        Defendants-Appellees.

Appeals from the United States District Court for the District of Delaware
in case nos. 98-CV-80 (consolidated with 98-CV-314 and 98-CV-316),
98-CV-478, and 04-CV-34, Chief Judge Sue L. Robinson.

## BRIEF OF APPELLANTS
## MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC.

        George M. Sirilla
        William P. Atkins
        Emily T. Bell
        Benjamin L. Kiersz
        Pillsbury Winthrop Shaw Pittman LLP
        1600 Tysons Boulevard
        McLean, Virginia 22102

July 18, 2005        (703) 905-2000

embodiments nonsensical: if each stent could "maintain the patency of a vessel" alone, there would be no need to consider multiples.

The district court used a dictionary to construe the claim term "stent" and thereby imposed a stand-alone functional limitation into each claimed "stent," "circular member," "ring," etc. But the specification inherently contradicts such a stand-alone functional limitation because, *inter alia*, the specification teaches (1) a stent may be as short as 1mm; and (2) stents may be used in multiples. One skilled in the art reading the specification would realize that a stent as short as 1mm would have difficulty functioning independently to maintain the patency of a diseased vessel and that multiple stents would never be needed if a single stent were sufficient to maintain vessel patency. Thus, the specification makes clear to one skilled in the art that the claimed "stent" is an element that may be used in varying lengths, alone or in multiples--not that each claimed "stent," "circular member," or "ring" must be independently functional standing alone.

Vessels and stents vary in length, diameter, shape, and strength, among other things. To incorporate a performance requirement that a stent must <u>successfully</u> function after being implanted in some undefined vessel and then maintain the patency in that environment is erroneous. The error reveals itself even more so when the district court applies it to the accused devices.

40

# EXHIBIT B



# EXHIBIT C

# "Boneau" Stent

**NAME:**

*Boneau Stent*

**CONSTRUCTION:**

Short tubular structure, < 10 mm, wound from single lengthwise zig-zagging metal wire

**DELIVERY AND DEPLOYMENT:**

Balloon expandable achieving enlargement of diameter by plastic deformation

## Gianturco '568

Fig. 1

CONFIDENTIAL
FOR COUNSEL ONLY
ACS-004562

Source: AX-268, AX-40

ADX 160.26

# EXHIBIT D

# Summary

## Dr. Saigal's Anticipation References

| Palmaz '417 | Schatz '984 | Wolff '003 | Connected Z-Stent | Gianturco '568 | Lee '917 | Boneau '331 |

SUBMITTED ORIGINAL APPLICATION (Palmaz '417)
SUBMITTED ORIGINAL APPLICATION (Schatz '984) — EP Counterpart
SUBMITTED ORIGINAL APPLICATION (Wolff '003)
SUBMITTED ORIGINAL APPLICATION (Connected Z-Stent) — Cited by Dr. Saigal as Furui
SUBMITTED ORIGINAL APPLICATION (Gianturco '568)
SUBMITTED ORIGINAL APPLICATION (Lee '917)
SUBMITTED (Boneau '331)

**3 out of 4 Asserted Patents — NO Rejections Over Boneau in 15 Issued Patents**

# EXHIBIT E



# EXHIBIT F



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

JAMES R. BARNEY
202.408.4412
james.barney@finnegan.com

September 2, 2005

*VIA FACSIMILE*

James G. Rizzo, Esq.
McDermott, Will & Emery
600 Thirteenth Street, N.W.
Washington, D.C. 20005

Re:   *Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.*
      C.A. No. 98-80-SLR (consolidated)

Dear Jim:

We write in regard to Medtronic's opening post-trial brief on inequitable conduct, in which Medtronic repeatedly asks the Court to draw a negative inference from ACS's reliance on the attorney-client privilege. For instance, regarding the privileged report from Mr. Lynch to Mr. Barclay on January 17, 1990, Medtronic argues:

> Medtronic believes the report Mr. Lynch wrote about the Boneau application would have shown ACS's intent to deceive the PTO. After all, if that report was beneficial to ACS, it would have produced it and relied upon it.

(Br. at 37.) Elsewhere, Medtronic asserts that "ACS has decided that, strategically, it is better to conceal this information from the Court than to disclose it." (*Id.* at 3.)

Contrary to Medtronic's argument, the law is clear that "no adverse inference shall arise from the invocation of the attorney-client and/or work product privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en banc); *see also In re Tudor Assocs. Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994) ("A negative inference should not be drawn from the proper invocation of the attorney-client privilege.") Indeed, like ACS, Medtronic has also asserted the attorney-client privilege in this case with respect to *hundreds* of communications. Is the Court to presume that each of those communications is harmful to Medtronic's case?

As a means of curing Medtronic's improper argument that ACS seeks to "conceal" Mr. Lynch's January 17, 1990 report from the Court (Br. at 3), ACS wishes to submit that report to the Court for *in camera* inspection. ACS will not do so, however, unless Medtronic agrees that

James G. Rizzo, Esq.
September 2, 2005
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

the submission of the report for *in camera* inspection is not a waiver of the attorney-client and work-product privileges.

Thus, we ask Medtronic to give its assurance that it will not argue that ACS has waived—in any way—the attorney-client or work-product privilege by allowing the Court to inspect Mr. Lynch's January 17, 1990 report *in camera*. Please let us know if Medtronic agrees to that as soon as possible, but no later than Thursday, September 15.

If you have any questions, please feel free to call me.

Sincerely,

James R. Barney

JRB/fyw

cc:  Karen Jacobs Louden, Esq.
     Frederick L. Cottrell, III, Esq.

# McDermott Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

James G. Rizzo
Attorney at Law
jrizzo@mwe.com
202.756.8325

September 13, 2005

**VIA FACSIMILE**

James R. Barney, Esq.
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re:  *Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.*,
      C.A. No. 98-80-SLR (consolidated)

Dear James:

This will respond to your correspondence of September 2, 2005 wherein ACS proposes to submit for *in camera* inspection the January 17, 1990 report from Edward Lynch to Bruce Barclay (the "Lynch Report").

First, as ACS is undoubtedly aware, it would be wholly improper for ACS to attempt to submit new evidence months after the conclusion of trial, especially where this particular evidence was (1) repeatedly sought during discovery; (2) repeatedly withheld on the grounds of alleged privilege; and (3) the subject of considerable argument and discussion before and during the inequitable conduct trial.

Second, Medtronic is not aware of any authorities that would permit ACS to submit *any* purported evidence to the trier of fact *post-trial* on an *in camera* basis or otherwise, particularly without seeking leave of Court, and without producing it to the opposing party.

Last, ACS must be aware that it cannot rely on the attorney-client privilege as both a sword and a shield. *See, e.g.*, D.I. 664, Ex. 14 at 3-4. ACS's proposed, *i.e.*, selective, disclosure of the Lynch Report will effectively waive the attorney-client privilege as to the Lynch Report itself, as well as any and all communications related thereto.

Kindly confirm that under no circumstances will ACS submit anything to the Court without first seeking leave to do so and providing Medtronic with a full and fair opportunity to respond.

U.S. practice conducted through McDermott Will & Emery LLP.
600 Thirteenth Street, N.W. Washington D.C. 20005-3096  Telephone: 202.756.8000  Facsimile: 202.756.8087  www.mwe.com

James R. Barney, Esq.
September 13, 2005
Page 2

We look forward to hearing from you.

Very truly yours,

*/s/ James G. Rizzo*
James G. Rizzo

cc: Karen Jacobs Louden, Esq.

WDC99 1129776-4.052734.0040