# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT CARDIOVASCULAR SYSTEMS, INC. and ABBOTT LABORATORIES, INC., | ) ) ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) ) | Civil Action No. 98-80 (SLR) |
| v. | ) ) ) | (Consolidated with C.A. No. 98-314 (SLR) and C.A. No. 98-316 (SLR)) |
| MEDTRONIC VASCULAR, INC. and MEDTRONIC USA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEDTRONIC'S SURREPLY IN OPPOSITION TO ABBOTT'S
MOTION TO LIFT STAY OF PROCEEDINGS ON ABBOTT'S MOTION
FOR PERMANENT INJUNCTION AS TO MEDTRONIC'S ENDEAVOR**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
1201 North Market Street
OF COUNSEL:                          P.O. Box 1347
Kevin S. Rosen                       Wilmington, DE 19899-1347
Matthew A. Hoffman                   (302) 658-9200
Anthony S. Newman
GIBSON, DUNN & CRUTCHER LLP          *Attorneys for defendants Medtronic*
333 South Grand Avenue               *Vascular, Inc. and Medtronic USA, Inc*
Los Angeles, CA 90071-3197
(213) 229-7000

H. Mark Lyon
Frederick S. Chung
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5300

April 1, 2008
**Redacted Filing Date: April 11, 2008**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ..................................................................................................................1

      A.    ████████████████████████████.................................................................1

      B.    Abbott Prevented Medtronic From Obtaining Necessary
            *eBay* Discovery Regarding Endeavor ...........................................................4

III.  CONCLUSION................................................................................................................7

ii.

## TABLE OF AUTHORITIES

Page(s)

Cases

*Cordis Corp. v. Adv. Cardiovascular Sys., Inc.*,
 No. 97-550, 1998 U.S. Dist. LEXIS 11342 (D. Del. July 17, 1998) ................................. 6

*Cordis Corp. v. Boston Scientific Corp.*,
 99 Fed. Appx. 928 (Fed. Cir. May 28, 2004)...................................................... 6

*Datascope Corp. v. Kontron Inc.*,
 786 F.2d 398 (Fed. Cir. 1986)............................................................... 6

*Tamari v. Bache & Co. (Lebanon) S.A.L.*,
 637 F. Supp. 1333 (N.D. Ill. 1986) ...................................................... 3

# I.     <u>INTRODUCTION</u>

Medtronic respectfully submits this surreply to correct two misstatements of fact contained in Abbott's Reply Brief In Support Of Its Motion To Lift Stay Of Proceedings (D.I. 830).  Although there are numerous legal and factual errors in Abbott's reply, these two issues in particular require correction because they are fundamentally wrong:

Second, Abbott's characterization of the *eBay* discovery that was previously allowed with respect to the bare-metal stents is categorically wrong.  Contrary to Abbott's assertions, there are several categories of discovery relating to the application of the *eBay* factors to Endeavor that: (i) Abbott prevented Medtronic from obtaining during the last round of discovery, and (ii) Medtronic will need to obtain from Abbott (and third parties) to respond to the Injunction Motion against Endeavor.

# II.     <u>ARGUMENT</u>

2.

3.



## B.    Abbott    Prevented    Medtronic    From    Obtaining Necessary *eBay* Discovery Regarding Endeavor

Abbott's claim that additional *eBay* discovery regarding Endeavor is unnecessary is also belied by the record.  Notably, Medtronic was not permitted to test the primary evidence Abbott has submitted to date regarding the effect that an injunction of Endeavor would have on the public interest.  Abbott had relied on eight paragraphs in the declaration of Dr. Joel Kahn to argue that Medtronic's Endeavor stent was no safer or more efficacious than other drug-eluting stents on the U.S. market.  (*See* D.I. 727 at 13; D.I. 830 at 4; *see also* D.I. 730 ¶¶ 8-15.)  But prior to Dr. Kahn's deposition, Abbott staked out the position that discovery regarding these paragraphs would not be permitted, because it was "stayed."  (*See* D.I. 828 Ex. B ("[T]he Court stayed all discovery related to DES at Medtronic's request – thus staying discovery as to paragraphs 8-15 of Dr. Kahn's declaration . . . .").)  Accordingly, Medtronic was not permitted to question Dr. Kahn about the statements or the evidence cited in these paragraphs during his deposition.[2]

Had Medtronic had the opportunity to question Dr. Kahn about this evidence, Medtronic would expect that Dr. Kahn would concede that Endeavor has several design and safety advantages as compared to the currently available drug-eluting stents.  Indeed, the medical literature Dr. Kahn relies upon confirms that Endeavor is significantly more deliverable than other drug-eluting stents.  (*See* D.I. 730 Ex. 2 at 2446 ("[D]evice success was significantly higher with [Endeavor as compared to Cordis' Cypher], owing to the enhanced stent deliverability likely associated with a more flexible, low profile thin-strut cobalt alloy stent.");

---

[2]    Medtronic briefly questioned Dr. Kahn about the medical literature referenced in these paragraphs to establish that these articles only are relevant to the drug-eluting stent portion of his declaration.  (*See* Deposition Transcript of Joel K. Kahn, M.D., Sept. 15, 2007 at 9:2-25; 11:10-12:7) (Louden Decl. Ex. E).)  But Medtronic asked no further questions about the substance of this evidence.

5.

*see also* Briefing Information for FDA Circulatory System Devices Panel Meeting, Oct. 10, 2007, at 4-55 (noting that "[p]rocedure success rates were higher with the Endeavor stent compared to the Cypher stent (99.4% vs 95.6%) or the Taxus stent (98.7% vs 96.8%).") (Louden Decl. Ex. F).)   Moreover, as noted in Medtronic's Answering Brief, Dr. Kahn's evidence indicates that Endeavor may be associated with fewer heart attacks than other drug-eluting stents. (*See* D.I. 828 at 3.)   This finding appears consistent throughout the Endeavor clinical program. (*See* Louden Decl. Ex. F at 4-55 (noting that Endeavor was associated with a lower incidence of peri-procedural non-Q wave myocardial infarctions in both ENDEAVOR III – against Cordis' Cypher – and ENDEAVOR IV – against Boston Scientific's Taxus).)

Another crucial category of information that was not provided by Abbott in the last round of *eBay* discovery is information relating to Abbott's own drug-eluting stent, Xience. Abbott repeatedly mentions Xience in the Injunction Motion (*e.g.*, D.I. 727 at 11-12, 17-18), yet Medtronic has not been permitted to conduct discovery concerning this device.[3]   Information relating to Xience is relevant not only to the irreparable harm prong of *eBay*, but it is also relevant to both the balance-of-hardships and public interest prongs.   In light of concerns raised at the FDA Circulatory System Devices Advisory Panel Meeting in November 2007 that Xience may be associated with an increased incidence of stent thrombosis than other drug-eluting stents, Medtronic expects that additional discovery will reveal, *inter alia*, that patients treated with Endeavor may be at a decreased risk of suffering deadly blood clots than patients treated with Xience.   (*See* Transcript of FDA Circulatory System Devices Advisory Panel Meeting, Nov. 29, 2007, at 374 (comments of Dr. John W. Hirshfeld, M.D.) ("[T]here clearly is no decrease in stent

---

[3]   For example, Medtronic limited its prior requests for production to documents relating to the relative safety and efficacy of Abbott's *bare-metal stents*.   (*See* D.I. 828 Ex. A at Request No. 18.)

6.

thrombosis, and depending upon which data set you look at, and how you examine it, it's possible that this device [Xience] might have a greater frequency of stent thrombosis than some other devices.") (Louden Decl. Ex. G); *id*. at 518-519 (comments of Dr. John C. Somberg, M.D.) (voting against approval of Xience because "the safety data in the 12 to 24 months was inadequate, and . . . it was of concern to me that with the recent tumult about late stent thrombosis . . . to have inadequate data leaves this issue really unaddressed for many years to resolve.").)

Finally, Medtronic should be permitted to take discovery from third parties, including physicians who would be affected by an injunction against Endeavor. *See, e.g, Cordis Corp. v. Boston Scientific Corp*., 99 Fed. Appx. 928, 935 (Fed. Cir. May 28, 2004) (affirming the district court's determination that the public interest weighed against a preliminary injunction because "the record contain[ed] evidence that some doctors prefer the Taxus stent over the Cypher stent"); *Datascope Corp. v. Kontron Inc*., 786 F.2d 398, 401 (Fed. Cir. 1986) (holding that the trial court did not err in finding that the public interest would be harmed by the grant of a preliminary injunction because the defendant's device – an intraaortic balloon catheter – was preferred by some doctors over the patent holder's device); *Cordis Corp. v. Adv. Cardiovascular Sys., Inc*., No. 97-550, 1998 U.S. Dist. LEXIS 11342, at *31 (D. Del. July 17, 1998) (determining that the public interest would be better served if a preliminary injunction did not issue against ACS's Multi-Link stent where the Multi-Link was "preferred by some physicians" and "may be better suited to some medical circumstances than its competitors").  None of this was addressed in the prior briefing and discovery period relating to the bare-metal stents.

In view of the foregoing additional discovery necessary to respond to Abbott's request for an injunction against Endeavor, due process mandates an additional discovery and

briefing period regarding Endeavor.  Whereas Abbott seeks to deny Medtronic the right to take discovery or submit any evidence in opposition to Abbott's Injunction Motion against Endeavor, Abbott has attempted to submit its own lopsided evidence in support of its briefs.  (*See, e.g.*, D.I. 730 ¶¶ 8-15.)  In fact, Abbott improperly used its reply brief here to submit *additional* evidence – an FDA press release concerning the results of the Endeavor clinical studies (D.I. 831 Ex. 3) – to bolster its purported showing that an injunction against Endeavor would not disserve the public health.  (*See* D.I. 830 at 4-5.)  As a result, Abbott's reply itself illustrates the need for adequate discovery and briefing on this issue.

### III.    CONCLUSION

For these reasons, and for the additional reasons set forth in Medtronic's Answering Brief (D.I. 828), Medtronic respectfully requests that the Court deny Abbott's Motion To Lift Stay Of Proceedings On Abbott's Motion For Permanent Injunction As To Medtronic's Endeavor, and enter an order requiring Abbott to file separately against Endeavor.  Alternatively, should the Court permit Abbott to accuse Endeavor in this case, Medtronic requests that it be granted six months to take and complete *eBay* discovery from Abbott and various third parties, and an additional sixty days to file its Answering Brief in opposition to Abbott's Injunction Motion against Endeavor.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*
_____

Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com
  *Attorneys for defendants Medtronic*
  *Vascular, Inc. and Medtronic USA, Inc.*

8.

OF COUNSEL:

Kevin S. Rosen
Matthew A. Hoffman
Anthony S. Newman
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000

H. Mark Lyon
Frederick S. Chung
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
(650) 849-5300

April 1, 2008
2227595

# EXHIBIT 2 – PART A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABBOTT CARDIOVASCULAR
SYSTEMS, INC. and ABBOTT
LABORATORIES, INC.,

        Plaintiffs,

    v.

MEDTRONIC VASCULAR, INC. and
MEDTRONIC USA, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**REDACTED PUBLIC**

**VERSION**

Civil Action No. 98-80 (SLR)
(Consolidated with C.A. No. 98-314 (SLR)
and C.A. No. 98-316 (SLR))

## <u>DECLARATION OF KAREN JACOBS LOUDEN</u>

Karen Jacobs Louden declares as follows:

    1.    I am a partner in the law firm of Morris, Nichols, Arsht and Tunnell LLP,

counsel to defendants Medtronic Vascular, Inc. and Medtronic USA, Inc. (collectively

"Medtronic") in this action.

    2.    I submit this declaration in support of Medtronic's Surreply to Abbott's

Motion to Lift Stay of Proceedings on Abbott's Motion for a Permanent Injunction as to

Medtronic's Endeavor.

    3.    Attached hereto as Exhibits are true and correct copies of the following

documents:

Exhibit A.

Exhibit B.

Exhibit C.

Exhibit D.

Exhibit E.    Excerpts of September 15, 2007 Deposition of Joel K. Kahn, MD.

Exhibit F.    Briefing Information for FDA Circulatory System Devices Panel Meeting, Oct. 10, 2007.

Exhibit G.    Excerpts of November 29, 2007 FDA Meeting of Circulatory Systems Devices Panel regarding Xience.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2008
Redacted Filing Date April 11, 2008
2231946

Karen Jacobs Louden

# EXHIBIT A

CONFIDENTIAL EXHIBIT

# EXHIBIT B

CONFIDENTIAL EXHIBIT

# EXHIBIT C

CONFIDENTIAL EXHIBIT

# EXHIBIT D

CONFIDENTIAL EXHIBIT

# EXHIBIT E

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ABBOTT CARDIOVASCULAR         )
SYSTEMS INC. and ABBOTT       )
LABORATORIES INC.,            )
                              )
                Plaintiffs,   )
                              )
vs.                           )    C.A. No. 98-80 (SLR)
                              )    (Consolidated with
MEDTRONIC VASCULAR, INC. and  )    C.A. No. 98-314 (SLR)
MEDTRONIC USA, INC.           )    and
                              )    C.A. No. 98-316 (SLR))
                              )
                Defendants.   )
                              )

        The Deposition of **JOEL K. KAHN, M.D.** taken by the

Defendants, pursuant to Notice, before Elizabeth A. Tubbert,

RPR, (CSR-4248), a Notary Public within and for the County of

Oakland, State of Michigan, at 900 Wilshire Drive, Suite 202,

Troy, Michigan, on Saturday, September 15, 2007.

APPEARANCES:

        FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
        BY:   ANDREW J. VANCE, Esq.
        901 New York Avenue, NW
        Washington, D.C. 20001-4413
        (202) 408-4000

              Appearing on behalf of the Plaintiffs

        GIBSON, DUNN & CRUTCHER, LLP
        BY:   FREDERICK S. CHUNG, Esq.
        1881 Page Mill Road
        Palo Alto, California 94304
        (650) 849-5392

              Appearing on behalf of the Defendants

1        your deposition that are responsive to Request No. 2?

2    A   Correct, there are no others.

3                MR. VANCE:  Counsel, just to clarify

4        something for the record, Dr. Kahn responded to the

5        subpoena subject to the objections set forth in his

6        written responses, and so to the extent the requests

7        were objectionable, unstated objections, the responses

8        and the production was subject to those.

9                MR. CHUNG:  Okay.

10   Q   (By Mr. Chung)  Well, taking a look at Exhibit 3 to

11       your deposition, I just want to make sure we go

12       through what's been attached here.  The first document

13       is your CV; is that correct?

14   A   Yes.

15   Q   And then the next document is your Declaration, which

16       is, at least in terms of the written content, the same

17       as Exhibit 1 to your deposition here today?

18   A   Right.

19   Q   And that includes as exhibits to it another copy of

20       your CV?

21   A   Yes.

22   Q   As well as an article from the Journal of the American

23       College of Cardiology?

24   A   Yes.

25   Q   Written by David Kandzari, K-A-N-D-Z-A-R-I?

9

| | | |
|---|---|---|
| 1 | A | That's correct. |
| 2 | Q | And then the next exhibit to your Declaration, which |
| 3 | | is attached as an exhibit to Exhibit 3, is an article |
| 4 | | entitled "Two-year results from ENDEAVOR III point to |
| 5 | | safety, efficacy"? |
| 6 | A | Yes. |
| 7 | Q | Then the next document after that is another copy of |
| 8 | | the Kandzari article.  Is that right? |
| 9 | A | Right. |
| 10 | Q | Followed by another copy of the article entitled |
| 11 | | "Two-year results from ENDEAVOR III point to safety, |
| 12 | | efficacy."  Do you see that? |
| 13 | A | Yes. |
| 14 | Q | Then the final document in this group is an article |
| 15 | | from Circulation, the Journal of the American Heart |
| 16 | | Association.  Is that right? |
| 17 | A | That would be correct. |
| 18 | Q | So, in essence, you relied on three articles for |
| 19 | | purposes of preparing your Declaration.  Is that |
| 20 | | right? |
| 21 | A | Right.  All three of these articles pertain to the |
| 22 | | drug-eluting stent aspect of my Declaration, which I |
| 23 | | think is from point 8 and beyond, and the first seven |
| 24 | | points did not require research articles or books to |
| 25 | | indicate the opinions. |

1    Q    Okay.  Did you provide these articles which are part

2         of Exhibit 3 to counsel or did counsel provide them to

3         you?

4    A    I provided them to counsel.

5    Q    And let's take a look at paragraph 7 of your

6         Declaration.  The third sentence of your Declaration

7         in paragraph 7 says, "Based on my personal experience,

8         my review of medical literature, and my discussions

9         with colleagues, moreover, Medtronic's stents are no

10        safer or more effective than other stents on the

11        market, such as made by ACS, Boston Scientific, and

12        Cordis."  Do you see that?

13   A    Yes.

14   Q    Starting with your personal experience, what in your

15        personal experience led you to conclude that

16        Medtronic's bare-metal stents are no safer or more

17        effective than other stents on the market?

18   A    My placement of their current and prior stent line in

19        patients that I care for.  That goes back with

20        Medtronic stents to probably 1988.

21   Q    So that's based on your personal implantation of

22        stents in patients; is that right?

23   A    Right.

24   Q    Did you create any statistical evidence as a result of

25        your personal experience?

1   A   No.

2   Q   Have you conducted any empirical studies of stent use

3       in your personal experience?

4   A   No.

5   Q   Is there anything else in your personal experience

6       that you're relying on in reaching your conclusion

7       that Medtronic's bare-metal stents are no safer or

8       more effective than other stents on the market?

9   A   No.

10  Q   Let's look at your statement regarding your review of

11      medical literature.  Do you rely on any of the

12      articles that are attached to Exhibit 3 as the medical

13      literature upon which you rely for the basis of your

14      conclusion in paragraph 7 of your Declaration?

15  A   No, because those articles don't speak to bare-metal

16      stent success rates.

17  Q   So I'm correct that none of these articles that have

18      been produced by your counsel describe any comparisons

19      among bare-metal stents; is that right?

20  A   Correct.

21  Q   In fact, none of these articles say anything about any

22      ACS stent, period; isn't that right?

23  A   That's correct.

24  Q   And none of these articles say anything about a Boston

25      Scientific bare-metal stent; is that right?

1   A       That's true.

2   Q       Nothing about a Cordis bare-metal stent; correct?

3   A       The Cordis bare-metal stent, correct, was not used in

4           these articles.

5   Q       None of these articles say anything about any

6           competitor's bare-metal stent; is that right?

7   A       That's true.

8   Q       So I guess I need to ask you, when you say your review

9           of medical literature in paragraph 7, what exactly are

10          you referring to?

11  A       I'm referring to the fact that I personally subscribe

12          both online and in print form to all leading

13          interventional cardiology journals and I review them

14          whether it's weekly or monthly that they arrive.  I

15          participate in journal clubs with cardiology fellows

16          that I train where we review current literature, and

17          in my knowledge of that literature, which comes out of

18          my general practice and my role as a teacher at my

19          hospital, that there is no literature that indicates

20          the Medtronic stents are safer and/or more effective,

21          and, therefore, I didn't bring any because none exist

22          for the current product line or recent product line

23          that indicates that that is the case.

24  Q       Are you aware of any medical literature that actually

25          compares any two bare-metal stents from different